NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0583n.06

No. 12-3355

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jun 18, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSÉ ANGEL TORRES-VAQUERANO, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| Petitioner, | ) | IMMIGRATION APPEALS |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**Before: ROGERS, WHITE, and ALARCÓN,** *Circuit Judges.

**HELENE N. WHITE, Circuit Judge**. José Angel Torres-Vaquerano petitions for review

of the Board of Immigration Appeals (BIA) affirmance of the Immigration Judge's (IJ) decision

denying his application for withholding of removal and humanitarian relief. The IJ and BIA both

found that Torres-Vaquerano presented no evidence that the undisputed past persecution, the torture

and murder of his father and three cousins and death threats to him and his mother, was *on account

of* his nuclear family's blood relation to two members of the Salvadoran military. Because that

finding was unsupported by substantial evidence and we conclude that any reasonable adjudicator

would be compelled to conclude to the contrary, we GRANT the petition for review and REMAND

to the BIA.

---

*The Honorable Arthur Alarcón, United States Circuit Judge for the Ninth Circuit Court of
Appeals, sitting by designation.

**I.**

Torres-Vaquerano was born in 1984 in Usulután, El Salvador, during the 12-year civil war (1980-1992) between the Salvadoran military and guerrilla groups comprising the Frente Farabundo Martí para la Liberación Nacional (FMLN). Described as "one of the most devastating armed conflicts in Latin America," the Salvadoran civil war resulted in more than 75,000 deaths.[1]

There is no dispute that in June 1989, when Torres-Vaquerano was 4 years old, guerrillas appeared at his family's home searching for two of his uncles who were members of the Salvadoran military. The uncles were not there. The guerrillas shot and killed a cousin that lived with Torres-Vaquerano's family and said they would return for the uncles. Three nights later, the guerrillas returned to Torres-Vaquerano's home. The uncles were not there, having fled to the United States. The guerrillas tortured and killed Torres-Vaquerano's father in his mother's presence, and beat and killed two other male cousins. The guerrillas told Torres-Vaquerano's mother that she had two nights to turn in her brothers or they would kill her and her young son. She fled with Torres-Vaquerano and has not returned to El Salvador.

Torres-Vaquerano lived with his mother in Guatemala, both undocumented, from 1992 until 2006, when he fled to the United States under death threats from Guatemalan police.

Torres-Vaquerano entered the United States in April 2006 without being admitted or paroled. A Notice to Appear (NTA) served on July 3, 2007 charged with him removal. In February 2008 he filed an application for asylum and withholding of removal, and for protection under the Convention

---

[1]Admin. R. 304/ USAID April 2006 report, Central America and Mexico Gang Assessment, Annex 1: El Salvador Profile.

Against Torture (CAT). Torres-Vaquerano admitted the NTA's allegations and conceded removability.

Torres-Vaquerano's mother remains in Guatemala, and his only sibling, a sister, has temporary protected status (TPS) in the United States, as do his uncles. Torres-Vaquerano has no family or friends in El Salvador.

## II. IJ's Decision

Following a December 3, 2009 merits hearing, the IJ found Torres-Vaquerano credible and "a good person." The IJ determined that the question whether the past persecution was on account of a protected ground was a close one, but denied all requested relief:

> Respondent's . . . family was basically attacked and wiped out. His father was murdered, he was going to be murdered, his mother and he fled the country when he was only 7 years old. If that is persecution, then that would be past persecution. Having shown past persecution, respondent would be entitled to humanitarian asylum . . . unless it could be shown that there is no likelihood of harm, even on another basis . . . .

> [I]t is not clear that what the guerillas did to his father was persecution under the Act. *They murdered his father as part of the civil war in Guatemala, they did not necessarily murder the father because they had anything against him.* In fact, they did not have anything against him, other than they thought he was sheltering his brothers, who apparently they considered either to be opponents of the guerillas or that they were hoping to recruit. Therefore, what happened to his father, as I read Elias-Zacarias[2] supra, would not be persecution under the Act. It certainly would be terrorism; it is murder; it is horrible; but there does not appear to be any factor for which that would be persecution. Therefore, under that analysis what happened to respondent's father and family, although horrible, would not be persecution for one of the factors under the Act . . . . . .

> Therefore respondent *cannot qualify for asylum or withholding even for*

---

[2]*INS v. Elias-Zacarias*, 502 U.S. 478 (1992).

> *humanitarian reasons.*
>
> . . . .
>
> Respondent is a good person and is eminently deserving of discretionary relief. Unfortunately, he has not applied for voluntary departure.

Admin. R. 60-65/IJ oral decision 12/3/09 (emphasis added).

### III. **Appeal to the BIA**

Torres-Vaquerano argued to the BIA that he established past persecution on account of a protected ground, that he was thus entitled to a presumption of future persecution, and that the Government had not rebutted that presumption. As he had before the IJ, Torres-Vaquerano requested humanitarian asylum relief.[3] *See Matter of Chen*, 20 I&N Dec. 16 (BIA 1989) (even if there is little likelihood of future persecution asylum should be granted where past persecution was so severe that returning alien to his native country would be inhumane.); *Klawitter v. I.N.S.*, 970 F.2d 149, 153 (6th Cir. 1992).

The BIA reviewed *de novo* the IJ's decision and dismissed Torres-Vaquerano's appeal, holding that the IJ correctly determined that Torres-Vaquerano's asylum application was untimely and that he did not establish extraordinary circumstances to excuse the late filing, and that he did not meet his burden of establishing eligibility for withholding of removal or CAT protection.

> We agree with the [IJ] that the respondent did not meet his burden of proof to establish that he was persecuted . . . . in El Salvador by guerillas . . . The [IJ] properly determined that the respondent *failed to meet his burden of establishing a nexus* between any past or feared harm and one of the grounds enumerated in the Act. Sections 101(a)(42), 208(b)(1)(B)(I) of the Act. The respondent did not prove that his membership in a particular social group was or will be at least one central reason for the harm suffered in the past or feared in the future by guerillas or criminal gang

---

[3]Admin. R. at 16.

> members, upon return to El Salvador. *See* 8 C.F.R. §1003.1(d)(3)(ii); *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010); *Matter of C-T-L*, 25 I&N Dec. 341 (BIA 2010). The record reflects that guerillas beat, tortured or murdered family members in El Salvador because they sought the location of two uncles who were members of the military and fled to the United States. The record contains no evidence that guerillas were or are motivated by the respondent's membership in his nuclear family.
> . . . .
> As the respondent did not show that he was persecuted in the past, he is not entitled to the presumption that his life or freedom would be threatened in the future in El Salvador by criminal gangs or guerillas on account of his membership in a particular social group. *See* 8 C.F.R. § 1208.16(b)(1)(I).

Admin. R. 3-5 (emphasis added). The BIA did not address Torres-Vaquerano's argument for

humanitarian asylum. *Id.* at 5 ("Because we have decided the appeal on the preceding basis, it is not

necessary to address the respondent's remaining contentions on appeal.")

## IV.

Torres-Vaquerano challenges the denial of his application for withholding of removal and

for humanitarian asylum relief. Pet'r Br. 17-19.

We review the IJ's opinion in conjunction with the BIA's additional discussion.

*Cruz–Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010) (citation omitted). We review

questions of law *de novo* and must affirm factual findings if supported by substantial evidence.

*Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We will not reverse factual findings unless

any reasonable adjudicator would be compelled to conclude to the contrary. *Khalili v. Holder*, 557

F.3d 429, 435 (6th Cir. 2009).

"An applicant for withholding of removal must demonstrate that . . . membership in a

particular social group . . . was . . . 'at least one central reason' for the claimed persecution." *Matter*

*of C-T-L-*, 25 I&N Dec. 341, 348 (BIA 2010). If the applicant demonstrates past persecution on account of a protected ground

> [t]he regulations governing the withholding of removal under the INA provide, much like those governing asylum, that . . . it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim. 8 C.F.R. § 208.16(b)(1)(i).

*Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (footnote omitted).

**A.**

Citing *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), the IJ concluded that Torres-Vaquerano's father's murder did not constitute past persecution *on account of a protected ground,* apparently interpreting that case as requiring direct proof of the persecutor-guerrillas' motives. The BIA similarly found that there was no record evidence that the guerrillas were motivated by Torres-Vaquerano's nuclear family's relation to two uncles who were members of the Salvadoran military, but did not rely on *Elias-Zacarias*.

With due respect to the IJ, *Elias-Zacarias* held that a respondent must provide either direct or circumstantial evidence of a persecutor's motive. 502 U.S. at 483–84 (holding that a respondent need not provide "direct proof of his persecutors' motives, . . . [b]ut since the statute makes motive critical, he must provide *some* evidence of it, direct or circumstantial) (emphasis in original); *see also Matter of C-T-L-*, 25 I&N Dec. at 348 ("The respondent has not produced 'evidence, either direct or circumstantial, from which it is reasonable to believe that [any] harm … would be motivated [even] in part by an actual or imputed protected ground.'" (*quoting Matter of J-B-N- & S-M-*, 24 I&N Dec. at 21 (internal citation omitted, bracketing in original))).

Torres-Vaquerano presented undisputed circumstantial evidence of the guerrillas' motives

for torturing and murdering his father and three cousins in his mother's sworn affidavit, which stated

(in translation):

> I, CORINA VAQUERANO AMAYA, of forty eight years of age, single, occupation
> of domestic relations, my Nationality is Salvadoran, and I currently reside in
> Guatemala,
>
> I HEREBY UNDER OATH DECLARE THE FOLLOWING:
>
> I am a female sad and worried because the problem that my son is in and that
> I am residing in a country that is not my country of orgin [*sic*], reason being that on
> the 30th day of June 1989, the Guerrillas came to our home looking for my brothers
> that were in the Military and because they (Gurellias [*sic*]) did not find them they
> murdered my nephew and they said that they would return for my brothers, but my
> brothers could not be present because they had fled to the United States, three nights
> later they came to our house again knocking on the door and because my brothers
> were not there they tortured my husband, and my other nephews that were there were
> taken outside, beaten and killed, they told me I had two more nights to turn my
> brothers over to them or they would kill me and my son then a young child, I carried
> him in my arms without knowing where to go because for me everything had come
> to an end, without being able to give the boys a proper burial, this is how I came to
> Guatemala, with out [*sic*] money, begging and with out a place to sleep with my
> young son, years went by with[out] any communication with my family that was iin
> [*sic*] the United States, my family believed I was dead, I am still afraid . . . I am afraid
> for my son's life if he were to return to El Salvador, because the murders [*sic*] of his
> father would think he had returned for vengance [*sic*] for the death of his father and
> that of my family. I ask mercy from the Judge that is attending the case of my son
> that God illuminate his heart and he sees the destiny of me and my son is to be far
> from my country . . . .

Admin. R. 151/sworn affidavit.

Corina Vaquerano, sister of the two members of the Salvadoran military, attested under oath

to the guerrillas' statements, and to her husband's and nephews' torture and murder for their failure

to produce two close relatives who were in the military. She attested to the guerrillas' death threats

against her and the young Torres-Vaquerano should she fail to turn her brothers over to them. Her affidavit coupled with Torres-Vaquerano's other filings and testimony provided strong circumstantial evidence that a central reason the guerrillas tortured and murdered Torres-Vaquerano's father and male cousins, and threatened to kill him and his mother, was on account of their blood relation to the uncles in the Salvadoran military. We conclude that the IJ and BIA's factual findings in this regard were unsupported by substantial evidence and that any reasonable adjudicator would be compelled to conclude to the contrary. *Khalili*, 557 F.3d at 435.

**B.**

If a petitioner is determined to have suffered past persecution on account of a protected ground, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 208.16(b)(1)(I). The Government then bears the burden of establishing by a preponderance of the evidence either that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds . . . upon the applicant's removal to that country," or that "[t]he applicant could avoid a future threat to his . . . life or freedom by relocating to another part of the proposed country of removal and, *under all the circumstances*, it would be reasonable to expect the applicant to do so." *Stserba v. Holder*, 646 F.3d 964, 975–76 (6th Cir. 2011) (emphasis added); 8 C.F.R. § 208.16(b)(1)(i) and (ii).

The IJ and BIA did not accord Torres-Vaquerano the presumption of future persecution to which he is entitled. And, although the IJ commented that circumstances had changed in El Salvador since Torres-Vaquerano's childhood, and alluded to relocation, neither the IJ or BIA considered

whether the Government (which advanced no argument and presented no evidence on either issue, Admin. R. at 113-18, 121) had rebutted the presumption of future persecution.

We respectfully disagree with our concurring colleague's observation that Torres-Vaquerano did not allege that he will be persecuted in the future on the basis of his original claim. Torres-Vaquerano's asylum application addendum stated that he fears that if he returns to El Salvador those that persecuted his family "will think that I have returned for revenge and kill me." Admin R. 138. In addition, Torres-Vaquerano's mother's sworn affidavit, submitted with his I-589 application for asylum, as well as for the merits hearing, states that she is afraid for her son's life should he return to El Salvador "because the murder[ers] of his father would think he had returned for vengeance for the death of his father and that of my family." Admin R. 150-51.

Regarding humanitarian asylum, the IJ concluded that Torres-Vaquerano was ineligible for because he did not establish a nexus between the past persecution and kinship ties to the Salvadoran-military- member uncles. The BIA agreed, and did not address humanitarian asylum.

Under these circumstances, it is for the BIA to address these matters in the first instance. *INS v. Orlando Ventura*, 537 U.S. 12, 16–18 (2002) (observing that "[a] court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions . . . Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal citations and quotations omitted); *Stserba v. Holder*, 646 F.3d 964, 975–76 (6th Cir. 2011) (remand is proper where the BIA "failed to consider a legal issue central to resolution of the petitioner's claims."); *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007) (same).

Accordingly, we REMAND to the BIA for proceedings consistent with this opinion.

ROGERS, J., concurring.  While reversal appears procedurally proper, it leads to a somewhat anomalous result.  Our decision represents a limited procedural holding that is unlikely to change the result in this case.  Although on remand, the BIA must "presume[] that the applicant's life or freedom would be threatened in the future in the country of removal *on the basis of the original claim*," 8 C.F.R. § 208.16(b)(1)(I), not even Torres alleges that he will be persecuted on the basis of his original claim—kinship ties.  Even if he were to benefit from the presumption that a finding of past persecution would afford him, that presumption would not affect the legal conclusion that he has not alleged a protected ground as the basis for the future harm he fears.

Torres did not argue in the administrative proceedings that the future harm he fears in El Salvador is related to the kinship ties that led to his persecution as a child.  Moreover, the Immigration Judge (IJ) acknowledged that the unstable, warlike conditions present in El Salvador at the time Torres and his mother fled the country are no longer present.  A.R. at 62.  Instead, Torres argued that his status as a young man in El Salvador (and perhaps one who is known to have returned from the United States) would make him a target for gang recruitment and/or harassment.  A.R. at 60–61.  This circuit's precedent supports the BIA's and the IJ's conclusions that this status does not amount to a legally cognizable "protected group" for purposes of withholding of removal.  *See, e.g.*, *Vindel v. Holder*, No. 11-3994, 2012 WL 5382942, at *2 (6th Cir. Nov. 5, 2012); *Esteban v. Holder*, 478 F. App'x 301, 303 (6th Cir. 2012); *see also Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008).