NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0364n.06

Case No. 18-4224

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 16, 2019
DEBORAH S. HUNT, Clerk

HECTOR LOPEZ SOSA, )
)
    Petitioner, )
)
v. )
)
WILLIAM P. BARR, U.S. Attorney General, )
)
    Respondent. )
)
)

ON PETITION FOR REVIEW FROM
THE UNITED STATES BOARD OF
IMMIGRATION APPEALS

BEFORE: McKEAGUE, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.  Hector Lopez Sosa, a native of Honduras, served in the Honduran Army from 1985 to 1989.  In 1992, MS-13 started recruiting Lopez Sosa, believing that the skills he had acquired in the military would prove useful to the gang.  The gang's recruitment efforts eventually escalated to harassment, threats, and even the murder of Lopez Sosa's stepdaughter.  Lopez Sosa still refused to join.  So, in 1995 or 1996, gang members savagely beat him with a baseball bat.  After this attack, Lopez Sosa traveled from town to town within Honduras to escape the gang.  In December 1999, he made his way to the United States.  During his many years here, Lopez Sosa was convicted of assault with a dangerous weapon and driving under the influence.  After the latter offense, the United States sought his removal.  Lopez Sosa conceded

that he was subject to removal, but applied for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(A).

An immigration judge denied Lopez Sosa's application. Under the withholding-of-removal statute, the judge recognized, Lopez Sosa needed to show that "his life or freedom would be threatened in [Honduras] because of . . . [his] membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A). But the judge found that MS-13 had threatened Lopez Sosa because of his refusal to join the gang. That finding doomed Lopez Sosa's claim because individuals who refuse to join a gang do not qualify as a "particular social group." *See Umana-Ramos v. Holder*, 724 F.3d 667, 669 (6th Cir. 2013). On appeal before the Board of Immigration Appeals, Lopez Sosa argued both that military veterans could qualify as a "particular social group" under § 1231(b)(3)(A), and that he had shown that MS-13 had threatened him because of his military service. The Board affirmed the immigration judge's decision, reasoning that Lopez Sosa's testimony demonstrated that MS-13 threatened him, not because he had served in the military, but because he had rebuffed the gang's repeated overtures to join.

Lopez Sosa now asks our court for relief. We must decline his request given the standard of review. The Board's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497–98 (6th Cir. 2015) (quoting 8 U.S.C. § 1252(b)(4)(B)). Lopez Sosa cannot meet this demanding standard. As noted, he must show that, if removed to Honduras, his "life or freedom" would be threatened "because of" his "membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A). He seeks to satisfy this test with a regulation that treats past persecution as presumptively establishing a likelihood of future persecution, arguing that his prior troubles in Honduras arose "on account of" his "membership in a particular social group." 8 C.F.R. § 1208.16(b)(1)(i). Yet we have

2

repeatedly rejected the argument that individuals who refuse to join gangs make up a "particular social group." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019); *Umana-Ramos*, 724 F.3d at 674. And a "reasonable adjudicator" could find that MS-13 previously threatened (and beat) Lopez Sosa for precisely this reason—his refusal to join. 8 U.S.C. § 1252(b)(4)(B). Lopez Sosa himself testified that it was "clear" MS-13 attacked him "because [he] did not join them, and [he] saw some of the activities they were doing." That ends the matter in this court.

Lopez Sosa's contrary arguments do not change things. He asserts that he identified a valid "social group," defining it as "former Honduran military members" instead of individuals who refuse to join gangs. Yet, even if military veterans could qualify as a "particular social group" (a question we need not address), Lopez Sosa failed to show that the gang threatened and attacked him "because of" his military service. *Id.* § 1231(b)(3)(A); *cf. Cruz-Guzman*, 920 F.3d at 1037. Indeed, at his hearing, Lopez Sosa listed several reasons why MS-13 threatened or attacked him— he "did not join them"; he "saw some of the activities they were doing"; he "knew their movements"; he "knew where they lived"; they thought he "might be a snitch and inform on them"—but he never indicated that MS-13 did so out of any spite against the military. In fact, when asked whether he "pose[d] a threat to [MS-13] because of [his] previous service in the military," Lopez Sosa responded: "Well, the actual threat was to not be with them, and to have been a member of the army and not be with them"—that is, MS-13 members threatened him because of their concerns with his refusal to "be with them."

Lopez Sosa counters that an injury can have more than one cause and that MS-13's threats and attack also arose "because of" his military service. That is true, he says, because his time in the military set the causal chain in motion for those later harms: His military service led him to develop skills that MS-13 desired, which led the gang to recruit him, which led to his refusals to

join, which led to the gang's retaliatory actions. Even assuming the facts showed that Lopez Sosa would not have been recruited by the gang but for his former military service (the immigration judge made no findings either way on this point), his argument still fails for both textual and precedential reasons.

As for text, the statutory language ("because of") and corresponding regulatory language ("on account of") demand more than a showing of but-for causation between one's "membership in a particular social group" and the "threatened" harm. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b)(1)(i). As we have said when interpreting the similar asylum statute, "[t]his is a question of motive, not just simple causation." *Cruz-Guzman*, 920 F.3d at 1037. In other words, the protected classification (here, membership in a particular social group) must be "a reason" for the threatened harm. 8 U.S.C. § 1231(b)(3)(C). Or, to use the tools of proximate causation, the statute requires a "direct relationship" between the social group and the harm. *Cf. Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010). Here, the motive (or direct cause) of MS-13's threats and attack was Lopez Sosa's refusal to join. His military service may have been a reason for the *recruitment*, but it was not a reason for the *threatened harm*. *See Jimenez-Becerril v. Sessions*, 724 F. App'x 475, 478 (7th Cir. 2018) (order); *see also Galdamez v. Lynch*, 630 F. App'x 608, 610 (6th Cir. 2015) (per curiam); *Ayala v. Holder*, 640 F.3d 1095, 1097–98 (9th Cir. 2011) (per curiam).

As for precedent, the Supreme Court rejected logic like Lopez Sosa's in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992). Elias-Zacarias fled to the United States after he refused to join Guatemalan guerrillas. He then sought refuge under the asylum statute, which covers those persecuted "on account of," among other grounds, "political opinion." *Id.* at 479 (quoting 8 U.S.C. § 1101(a)(42)). Elias-Zacarias argued that the guerillas would persecute him for his refusal to join,

and that this persecution would arise "on account of" his political opinion—namely, that he should stay neutral in the guerillas' fight with the government. *Id.* at 483. Elias-Zacarias's opinion may well have been a but-for cause of the feared persecution: It would lead him to refuse to join the guerrillas, which, in turn, would trigger their retaliatory persecution. But the Court rejected the argument that this persecution would be "on account of" Elias-Zacarias's political opinion. *Id.* It reasoned that he had not shown that the persecution would arise "*because of* that political opinion, rather than because of his refusal to fight with them." *Id.* So too here, Lopez Sosa did not establish the required connection between his military service and the harms from MS-13.

That fact distinguishes Lopez Sosa's case from two unpublished opinions on which he relies. In *Torres-Vaquerano v. Holder*, 529 F. App'x 444 (6th Cir. 2013), Torres-Vaquerano argued that guerillas persecuted him and his family during the Salvadoran civil war because of his family relationship to two uncles who were in the military that was fighting the guerrillas. We agreed that he had established the necessary connection between these attacks and a particular social group (his family) with "undisputed" evidence that guerillas had persecuted him and his relatives—murdering his father and three cousins and threatening to kill him—precisely because of their relationship to the uncles. *Id.* at 448. Similarly, in *Juan-Pedro v. Sessions*, 740 F. App'x 467 (6th Cir. 2018), the Board failed to consider evidence showing that MS-13 gang members in Guatemala had chosen Juan-Pedro to rob and rape because of her Mayan ancestry (a particular social group). *Id.* at 471–72. Lopez Sosa's status as a military veteran, by contrast, has a far more attenuated connection to MS-13's persecution than the direct connection between the social groups and the persecution in these other cases.

We deny Lopez Sosa's petition for review.

5