NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0523n.06

No. 18-4154

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|                                         |   |                          |
|-----------------------------------------|---|--------------------------|
| ANDRES QUINTERO-FLORENTINO,             | ) |                          |
|                                         | ) |                          |
|    Petitioner,           | ) |                          |
|                                         | ) | ON PETITION FOR REVIEW   |
| v.                                      | ) | FROM THE UNITED STATES   |
|                                         | ) | BOARD OF IMMIGRATION     |
| WILLIAM P. BARR, Attorney General,      | ) | APPEALS                  |
|                                         | ) |                          |
|    Respondent.           | ) |                          |

FILED
Oct 16, 2019
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

PER CURIAM. Andres Quintero-Florentino petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As set forth below, we **DENY** Quintero-Florentino's petition.

Quintero-Florentino, a native and citizen of Mexico, entered the United States without inspection in January 2009. In August 2012, the Department of Homeland Security served Quintero-Florentino with a notice to appear in removal proceedings, charging him with removability as an alien present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Quintero-Florentino appeared before an immigration judge (IJ) and conceded removability as charged. Quintero-Florentino filed an application for asylum and withholding of removal, asserting his membership in a particular social group, and for protection under the CAT.

At the hearing on his application, Quintero-Florentino testified that his mother was threatened on three occasions by drug traffickers who were looking for her boyfriend because of his relationship with the wife of one of the drug traffickers. The first time, three drug traffickers asked Quintero-Florentino's mother where to find her boyfriend and gave her a warning. The next week, the drug traffickers again approached Quintero-Florentino's mother and demanded information about her boyfriend, threatening to take her son's life or force him to be one of their soldiers. When his mother did not say anything, the drug traffickers threw her to the ground and said, "[T]he next time, it's going to be your son's life." (A.R. 102). The third time, the drug traffickers forced Quintero-Florentino's mother into a taxi and held her at gunpoint for several hours. The drug traffickers again threatened to take her son's life if she did not give them her boyfriend's contact information. After the drug traffickers obtained her boyfriend's number from her phone, they released Quintero-Florentino's mother after she promised that she would permit Quintero-Florentino to join their ranks, and she never saw them again. Quintero-Florentino, who did not have any direct contact with the drug traffickers, left Mexico shortly after his mother's abduction. Quintero-Florentino testified that he is afraid to return to Mexico because he now has a family and fears harm to his children.

At the conclusion of the hearing, the IJ denied Quintero-Florentino's application for asylum, withholding of removal, and CAT protection but granted his request for voluntary departure. The IJ concluded that Quintero-Florentino had failed to establish eligibility for asylum based on his family membership, finding that his "relationship with his mother [was] secondary or incidental to the perceived harm, as the drug traffickers were seeking information about the mother's boyfriend and not targeting the family." (A.R. 54). The IJ went on to determine that, because Quintero-Florentino had failed to establish eligibility for asylum, he had necessarily failed to satisfy the more stringent standard for withholding of removal. As for Quintero-Florentino's

claim for CAT protection, the IJ determined that the evidence demonstrated that Mexico is not turning a "blind eye" to torture and fell short of establishing that Quintero-Florentino will more likely than not be tortured if removed to Mexico.

The BIA dismissed Quintero-Florentino's appeal from the IJ's decision. The BIA concluded that Quintero-Florentino had failed to meet his burden of proof for asylum or the higher standard for withholding of removal. The BIA agreed with the IJ that the evidence was insufficient to establish a nexus to a protected ground and was unpersuaded by Quintero-Florentino's argument that the harm to his mother constituted past persecution to him. Because Quintero-Florentino had not established past persecution, the BIA stated, he was ineligible for humanitarian asylum. Finally, the BIA concluded that Quintero-Florentino's contentions on appeal were insufficient to satisfy his burden of proof for CAT protection.

This timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual determinations for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293-94 (6th Cir. 2016).

An alien seeking asylum must demonstrate "that [he] meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to [his] home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*,

607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). Quintero-Florentino sought relief based on his membership in a particular social group—his family.[1]

In support of his petition for review, Quintero-Florentino contends that the agency erred in denying asylum based on threats he received that, as the BIA put it, resulted in "a fear of persecution on account of his familial relationship." To be eligible for asylum on this basis, Quintero-Florentino must show that his family membership "was or will be at least one central reason for persecuting" him. 8 U.S.C. § 1158(b)(1)(B)(i). "This is a question of motive, not just simple causation." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019). Quintero-Florentino's family membership "cannot be merely 'incidental or tangential to the persecutor's motivation.'" *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 213 (B.I.A. 2007) (quoting H.R. Conf. Rep. No. 109-72, at 163 (2005)); *see Lopez-Arias v. Barr*, __ F. App'x __, 2019 WL 2524405, at *2-3 (6th Cir. June 19, 2019). "[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim, especially if the end is not connected to another protected ground." *Matter of L-E-A-*, 27 I. & N. Dec. 40, 45 (B.I.A. 2017), *overruled on other grounds*, 27 I. & N. Dec. 581 (Att'y Gen. 2019); *see Betancourt-Aplicano v. Sessions*, 747 F. App'x 279, 284 (6th Cir. 2018). The BIA determined that the drug traffickers threatened Quintero-Florentino as a means to an end—that is, to obtain information from his mother—and that the evidence was therefore insufficient to establish the required nexus to a protected ground.

---

[1] After briefing was completed in this case, the Attorney General issued an opinion addressing "whether, and under what circumstances, an alien may establish persecution on account of membership in a 'particular social group' based on the alien's membership in a family unit." *Matter of L-E-A-*, 27 I. & N. Dec. 581, 584 (Att'y Gen. 2019). The Attorney General concluded that, "to qualify as a 'particular social group,' an applicant must demonstrate that his family group meets each of the immutability, particularity, and social distinction requirements." *Id.* at 593. Because, as discussed below, the nexus requirement disposes of Quintero-Florentino's asylum claim, we need not address whether *Matter of L-E-A-* impacts his particular social group.

*See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492-93 (5th Cir. 2015). The record does not compel a contrary conclusion. *See Cruz-Guzman*, 920 F.3d at 1037.

Quintero-Florentino argues that the agency failed to consider granting asylum based on his fear of future persecution. "An applicant can establish the persecution element in an asylum application by two alternative methods: (1) prove that he or she has suffered past persecution, or (2) show that he or she has a well-founded fear of future persecution." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)); 8 C.F.R. § 208.13(b)(1)-(2).. Quintero-Florentino failed to establish that he had suffered persecution in the past on account of a protected ground. Further, the evidence Quintero-Florentino provided to support a fear of future persecution is insufficient to reach the "well-founded" threshold. *See Mapouya*, 487 F.3d at 412. The drug traffickers obtained the information they sought with the threat, and Quintero-Florentino's mother has continued living in Mexico for ten years without any further interaction with the perpetrators.

Substantial evidence supports the denial of Quintero-Florentino's asylum application on the basis that he failed to establish a nexus between his family membership and any past or feared future harm. By failing to establish his eligibility for asylum, Quintero-Florentino necessarily failed to satisfy the more stringent standard for withholding of removal. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).

Unlike a claim for asylum or withholding of removal, a claim for CAT protection does not require a nexus to a protected ground. *See Mapouya*, 487 F.3d at 414. To be eligible for CAT protection, Quintero-Florentino must demonstrate that it is more likely than not that if he is removed to Mexico, he will suffer torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R.

§ 1208.18(a)(1); *see* 8 C.F.R. § 1208.16(c)(2). The BIA concluded that Quintero-Florentino had failed to meet this burden of proof.

Quintero-Florentino argues that the agency ignored his evidence about the Mexican government's inability to control transnational criminal organizations (TCOs), failed to make specific findings about corruption within the Mexican law enforcement and military, and failed to explain the denial of his application for CAT protection. The BIA "has no duty to write an exegesis on every contention" and need only "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142-43 (5th Cir. 1984)). The BIA satisfied these requirements by recounting the IJ's disposition of Quintero-Florentino's claim for CAT protection and acknowledging his arguments on appeal.

Substantial evidence supports the denial of Quintero-Florentino's application for CAT protection. The Mexican government's alleged inability to control TCOs does not constitute acquiescence. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015). The travel warning submitted by Quintero-Florentino reflects that "the Mexican government has been engaged in an extensive effort to counter TCOs" and "has deployed federal police and military personnel throughout the country as part of its efforts to combat the TCOs." (A.R. 169-70). The record does not compel the conclusion that Quintero-Florentino would more likely than not be tortured by or with the acquiescence of the Mexican government.

For these reasons, we **DENY** Quintero-Florentino's petition for review.