**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0549n.06

No. 20-3235

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 25, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CELSO AJQUI GOMEZ, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| WILLIAM P. BARR, Attorney General, | ) | |
| | ) | |
| **Respondent.** | ) | OPINION |
| | ) | |

**Before:  BATCHELDER, MOORE, and ROGERS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Celso Ajqui Gomez petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying his applications for relief from removal.  Because substantial evidence supports the BIA's decision and the immigration judge's underlying decision that the BIA adopted, we **DENY** the petition for review.

## I.  BACKGROUND

Ajqui Gomez is a native and citizen of Guatemala.  Administrative Record ("A.R.") at 335 (Notice to Appear).  He entered the United States on or about August 11, 2014, and was not admitted or paroled after inspection by an Immigration Officer.  *Id.*  After being served with a notice to appear, and conceding its removability charge, *id.* at 140–41 (Hr'g Tr. at 38–39), Ajqui Gomez appeared before an immigration judge for removal proceedings on May 14, 2018, and

submitted an application for relief from removal, *id.* at 157–58 (Hr'g Tr. at 53–54). He applied for asylum, statutory withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). *Id.* at 67 (I-589 Appl. at 5).

During Ajqui Gomez's removal proceedings, he detailed the efforts of three members of the Mara-13 gang to recruit him. During his first encounter with the gang, he declined their request to join them, and they became upset but did not harm him. *Id.* at 170 (Hr'g Tr. at 66). During his second encounter with the gang members, Ajqui Gomez not only rebuffed their efforts to recruit him but "told them to stop looking for [him]." *Id.* at 174 (Hr'g Tr. at 70). In response, one of the gang members—whom Ajqui Gomez identified by name—said that "it was better to think about it because if [he] decided not, they were going to kill [him]." *Id.* Although the gang members "said that nothing was going to happen that time, [they said that] the next time they would either hit [him] or torture [him]." *Id.* at 175 (Hr'g Tr. at 71). In his final encounter with the gang members, Ajqui Gomez told them that he did not want to join the gang, and they physically attacked him, telling him that "if [he] did anything they w[ould] kill [him] and [his] family and that they w[ould] continue looking for [him] until they found [him]." *Id.* at 179 (Hr'g Tr. at 75). Eventually, he lost consciousness out of fear, and the gang members stopped the beating. *Id.* at 177 (Hr'g Tr. at 73). Ajqui Gomez remembers his parents coming and bringing him home. *Id.* at 178 (Hr'g Tr. at 74). When asked why the gang members wanted him to join so badly, Ajqui Gomez testified that "they wanted to recruit more people, to hurt more people." *Id.* at 180 (Hr'g Tr. at 76). The IJ asked him, "Is there any other reason you think they were looking for you other than the fact you were a young male?" to which Ajqui Gomez responded, "There's no other reason." *Id.* at 182 (Hr'g Tr. at 78).

The IJ rendered an oral decision denying relief to Ajqui Gomez. After determining that the particular social group ("PSG") in question was "young Guatemalan males who refuse gang recruitment" and that Ajqui Gomez was a credible witness, the IJ stated that "[c]learly the issue in this case is nexus." *Id.* at 95, 97 (IJ Decision at 2, 4). Without stating a conclusion, the IJ proceeded to discuss three BIA decisions that "do not find resistance to gang membership and recruitment by gangs to be a particular social group cognizable by this Court." *Id.* at 97–98 (IJ Decision at 4–5). The IJ made no conclusions regarding the cognizability of Ajqui Gomez's proposed PSG. Instead, shifting back to nexus, the IJ stated: "This is very simply a case of an individual fleeing general criminal conditions and fleeing from the gang fearing that they would harm him should they attempt to recruit him." *Id.* at 98 (IJ Decision at 5). The IJ also found that there was no nexus between the persecution and Ajqui Gomez's other proposed PSG related to his indigenous group.[1] *Id.* As to both PSGs, the IJ denied the application for asylum. *Id.*

The IJ next concluded that because statutory withholding of removal requires a higher probability of persecution than asylum and because Ajqui Gomez had failed to demonstrate nexus, he logically failed to establish entitlement to relief. *Id.* Finally, the IJ concluded that Ajqui Gomez was ineligible for relief under the Convention Against Torture, *id.* at 98–99 (IJ Decision at 5–6), a conclusion that Ajqui Gomez does not challenge in this petition. The IJ determined that Ajqui Gomez would be ineligible for voluntary departure, denied his applications for relief from removal, and ordered him removed from the United States to Guatemala. *Id.* at 99 (IJ Decision at 6). Ajqui Gomez appealed the IJ's decision to the BIA. *Id.* at 47–49 (Notice of Appeal at 1–3).

---

[1]Ajqui Gomez does not challenge this finding in the present petition, so we do not consider it here.

3

The BIA dismissed Ajqui Gomez's appeal in a two-page order, adopting the IJ's decision as its own, *id.* at 3 (BIA Decision at 1). The Board acknowledged that the IJ did not make a finding as to the cognizability of Ajqui Gomez's proposed PSG and that "[i]nstead, the Immigration Judge held that 'the issue in this case is nexus.'" *Id.* at 4 (BIA Decision at 2) (quoting IJ Decision at 4). The Board concluded that it "discern[ed] no clear error with the Immigration Judge's finding that there is no nexus to any proposed particular social group; rather, 'this is a very simple case of an individual fleeing general criminal conditions.'" *Id.* (quoting IJ Decision at 4–5). The Board thus dismissed Ajqui Gomez's appeal on the same grounds as the IJ's decision. *Id.*

Ajqui Gomez timely filed this petition for review. We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252(a)(1).

## II. STANDARD OF REVIEW

"Where, as here, the BIA reviewed the IJ's decision *de novo* and issued its own separate opinion, we review the BIA's opinion as the final agency determination." *Hassan v. Holder*, 604 F.3d 915, 924 (6th Cir. 2010). "However, to the extent the BIA adopted the immigration judge's reasoning, this court also reviews the immigration judge's decision." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015). We "review[] both the immigration judge's and the BIA's factual findings under the substantial-evidence standard." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "The substantial-evidence standard requires us to defer to the agency's findings of fact 'if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (citations omitted)). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ben Hamida*

*v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review questions of law de novo. *Giraldo v. Holder*, 654 F.3d 609, 611 (6th Cir. 2011).

### III. DISCUSSION

The IJ and BIA concluded that Ajqui Gomez failed to demonstrate a nexus between the harm he suffered and a protected ground. In order for an applicant to qualify for asylum, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). That is, there must be "a link between the acts of persecution and the petitioner's protected-group identity." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011). "It is not sufficient that the applicant has been subjected to indiscriminate abuse, . . . or has been the victim of a random crime." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam). "Instead, the applicant must establish that he or she was specifically targeted . . . for abuse based on one of the statutorily protected grounds." *Id.* Whether a nexus existed between Ajqui Gomez's alleged persecution and his proposed PSG is a factual determination that we review for substantial evidence. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 500 (6th Cir. 2015).

Ajqui Gomez argues that the IJ's conclusion that he fled "general criminal conditions," A.R. at 98 (IJ Decision at 5), is erroneous. Pet'r's Br. at 8 (arguing that the application for relief "does not describe 'generalized criminal activity'"). Instead, he argues that "he would not have been targeted but for his refusal to join the gang." *Id.* According to Ajqui Gomez, this basis for being targeted—his membership in the PSG of "young Guatemalan males who refuse gang recruitment"—is the only one evident in the record. In Ajqui Gomez's view,

> [t]here is no other basis to link the attacks. He wasn't robbed; he did not have a personal issue with the attackers, etc.

> It is one thing for the BIA to reject the proposed particular social group, but it is quite different for it to agree there was no nexus when there is no other plausible reasons [sic] for the attacks.

*Id.* at 8–9. In response, the government first argues that Ajqui Gomez "must establish that the wrongdoer knows or believes that [the victim] has a protected characteristic and must be motivated by it." Resp't's Br. at 11. The government then argues that Ajqui Gomez was targeted not on account of his membership in his proposed PSG but rather "in furtherance of the criminal group's recruitment and criminal activities." Resp't's Br. at 8; *id.* at 12 ("The only motive identified within the record was to further the gang's size and influence."). It points to Ajqui Gomez's own testimony that he was targeted because the gang wanted to recruit people and for no other reason, and says that "[t]here is no evidence that Mr. Gomez was singled out for his ethnicity or even for rejecting the recruitment offer." *Id.* at 12.

Even accepting Ajqui Gomez's assertions as true, and even assuming that his proposed PSG is cognizable under the INA, his nexus argument is foreclosed by binding precedent.[2] In *I.N.S. v. Elias–Zacarias*, 502 U.S. 478 (1992), the Supreme Court considered whether forced recruitment by guerrillas seeking to "fill their ranks" constituted persecution "on account of" a statutorily protected ground. *Id.* at 482. The Court rejected the Ninth Circuit's conclusion that the petitioner's opposition to recruitment constituted a political opinion and that retaliation he feared from the guerrillas would have been on account of this opinion. Much of the Court's opinion deals

---

[2]In assuming that Ajqui Gomez's proposed PSG is cognizable, we note that we have never held that an IJ is required to make a finding as to the cognizability of an underlying protected ground before proceeding to the nexus analysis. *See Santos v. Attorney Gen. of U.S.*, 552 F. App'x 197, 202 (3d Cir. 2014) (explaining that the INA does not "require[] the BIA to determine the legal cognizability of each proposed group before proceeding to the nexus analysis").

specifically with what constitutes a "political" motive, which is irrelevant to this case. *Id.* at 481–82. What is relevant here is the Court's discussion of basing an application for relief from removal on a resistance to recruitment:

> [W]e need not decide whether the evidence compels the conclusion that Elias–Zacarias held a political opinion. Even if it does, Elias–Zacarias still has to establish that the record also compels the conclusion that he has a "well-founded fear" that the guerrillas will persecute him *because of* that political opinion, rather than because of his refusal to fight with them.

*Id.* at 483. Thus, according to the Supreme Court, persecution based on the petitioner's "refusal to fight with [the persecutors]" was insufficient to merit relief, and the claim failed. The same is true here. Ajqui Gomez's only argument is that he was persecuted because of his refusal to join the gang, which he frames as the definition of his particular social group. But precisely the same rhetorical framing was rejected in *Elias-Zacarias*, as shown above; persecution based on refusing to fight with a group was rejected as basis for demonstrating nexus to a statutorily protected ground. Our own caselaw supports the same conclusion. *See Khozhaynova v. Holder*, 641 F.3d 187, 196 (6th Cir. 2011) ("Khozhaynova failed to connect the attacks on her and her husband, the robberies, the fire or the threat to kidnap her son, to anything more than the financial demands of criminal corruption."); *Zaldana Menijar*, 812 F.3d at 500 ("[F]orced recruitment alone does not establish the nexus of persecution 'on account of' a protected statutory ground."); *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019) ("Cruz's evidence does not show that 18th Street's actions were motivated by a particular animus toward the Cruz-Guzman family itself, as opposed to an ordinary criminal desire for financial gain."). And even if the Supreme Court had not directly rejected this sort of nexus argument, substantial evidence—namely, Ajqui Gomez's own testimony—would support the IJ's and BIA's conclusions that the gang's persecution of him was

7

based centrally not on animus toward "young Guatemalan males who refuse gang recruitment," but on his individual refusal to join their gang, against their wishes to expand their reach. For this reason, Ajqui Gomez's asylum claim fails.

Separate from the asylum analysis, we note one harmless error in the IJ's and BIA's analyses of withholding of removal. Specifically, they relied on the false premise that a doomed asylum claim connotes a doomed withholding claim. The IJ stated: "Having failed to demonstrate that nexus, it logically follows that [Ajqui Gomez] cannot meet the higher standard of a clear probability of persecution required by withholding of removal under the statute." A.R. at 98 (IJ Decision at 5). This sentence conflates two critically different parts of a withholding claim, a difference we recently highlighted in *Guzman-Vazquez v. Barr*, 959 F.3d 253 (6th Cir. 2020). It is true that the INA's withholding-of-removal provision requires an applicant to demonstrate a higher likelihood of persecution than required of an applicant for asylum. *Id.* at 274. But this is distinct from the issue of nexus, which represents a *lower* burden for withholding applicants than for asylum applicants. *Id.* ("Our observation in *Singh* [*v. Ashcroft*, 398 F.3d 396 (6th Cir. 2005),] that withholding poses a 'higher burden' than asylum related only to the former's steeper requirement of more-likely-than-not persecution."). Whereas asylum applicants must demonstrate that a protected ground was "one central reason" for their persecution, 8 U.S.C. § 1158(b)(l)(B)(i), withholding applicants must demonstrate only that such ground was "a reason" for their persecution, 8 U.S.C. § 1231(b)(3)(C). *See Guzman-Vazquez*, 959 F.3d at 270–74. Thus, "fail[ing] to demonstrate nexus" in an asylum application has nothing to do with "meet[ing] the higher standard of a clear probability of persecution" in a withholding application. A.R. at 98 (IJ Decision at 5). A doomed asylum claim does not necessarily mean a doomed withholding claim.

In this case, however, Ajqui Gomez has not demonstrated a nexus to a proposed PSG, even when the lower standard for withholding ("a reason," as opposed to "one central reason") controls. Therefore, Ajqui Gomez's withholding claim fails.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.