NOT RECOMMENDED FOR PUBLICATION
File Name:  24a0114n.06

No. 23-3573

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ELIODORO N. GARRIDO RODRIGUEZ; DAMARIS L. GARRIDO RAMIREZ, | ) ) ) | **FILED** Mar 12, 2024 KELLY L. STEPHENS, Clerk |
| Petitioners, | ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) ) | |
| Respondent. | ) ) ) | OPINION |

Before:  GRIFFIN, NALBANDIAN, and MATHIS, Circuit Judges.

PER CURIAM.  Eliodoro N. Garrido Rodriguez and his minor daughter, Damaris L. Garrido Ramirez, petition this court for review of an order of the Board of Immigration Appeals (BIA) dismissing their appeal from the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  As set forth below, we **DENY** the petition for review.

I.

The petitioners, both natives and citizens of Honduras, applied for admission to the United States in July 2015.  An asylum officer found that the petitioners had demonstrated a credible fear of persecution or torture in Honduras.  After that, the Department of Homeland Security served them with notices to appear in removal proceedings, charging them with removability as immigrants who, at the time of application for admission, were not in possession of valid entry documents.  *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Appearing before an immigration judge (IJ), the petitioners admitted the factual allegations set forth in the notices to appear and conceded

removability as charged. Garrido Rodriguez applied for relief from removal in the form of asylum, withholding of removal, and CAT protection. Garrido Rodriguez's application included his daughter as a derivative beneficiary, but she also filed her own application seeking relief on the same grounds.

At the hearing on the petitioners' applications, Garrido Rodriguez asserted that he would be harmed in Honduras on account of his membership in a particular social group. According to Garrido Rodriguez, that particular social group consisted of persons who have worked for Oscar Ramos in a private security firm. Garrido Rodriguez began working for Ramos as a security guard in March 2015. Garrido Rodriguez testified that Ramos worked closely with local law enforcement and performed "dirty jobs" for the police. In his application, Garrido Rodriguez asserted that he "became stuck in the middle of a war between gang members and the police" and that both sides attempted to obtain information from him and threatened him.

Garrido Rodriguez asserted that, in April 2015, a group of local youths became associated with the Mara 18 gang and began to kill people connected to Ramos because of Ramos's connection with the local police. In May 2015, gang members fired 35 gunshots at Roger Marquez, Garrido Rodriguez's friend who also worked as a security guard for Ramos, and left him for dead. One of the shooters "said what a shame that fool [Garrido Rodriquez] did not come" with Marquez. Garrido Rodriguez further asserted that one of the shooters called him and told him "to watch out because . . . they were going to finish off everyone that worked for" Ramos.

Garrido Rodriguez left Honduras because "both sides" began to threaten him and "both sides are murderers." According to Garrido Rodriguez, gang members wanted him to hand over Ramos, while Ramos wanted him to hand over gang members. After Garrido Rodriguez left Honduras, another friend and co-worker, Anael Pineda, was killed by Ramos because he refused

to provide information about gang members. A year later, gang members assassinated Ramos. Garrido Rodriguez testified that he is afraid to return to Honduras because Ramos's employees will kill him and because gang members will retaliate against him for working for Ramos.

After the hearing, the IJ issued a written decision denying the petitioners' applications and ordering their removal to Honduras. The IJ found that Garrido Rodriguez was credible and had a subjective fear of returning to Honduras. But the IJ concluded that Garrido Rodriguez failed to establish a nexus between any past or feared harm and a cognizable protected ground, determining that his particular social group lacked immutability, particularity, and social distinction. The IJ also found that Garrido Rodriguez did not suffer past harm rising to the level of persecution and that he could safely relocate to a different part of Honduras. Having failed to establish eligibility for asylum, the IJ concluded, Garrido Rodriguez had necessarily failed to satisfy the more stringent standard required for withholding of removal. As for Garrido Rodriguez's request for CAT protection, the IJ determined that he had failed to establish that any potential harm would more likely than not occur or rise to the level of torture or that the Honduran government would be willfully blind to any such harm.

The petitioners appealed the IJ's decision to the BIA. Dismissing their appeal, the BIA agreed with the IJ that Garrido Rodriguez's particular social group was not cognizable because it lacked social distinction. The BIA also noted that the petitioners had failed to raise a meaningful challenge to the IJ's finding that Garrido Rodriguez's proposed group lacked particularity and had therefore waived that issue. Because the petitioners had failed to show that Garrido Rodriguez's particular social group was cognizable and had therefore failed to establish eligibility for asylum, the BIA declined to address their other arguments about that form of relief. The BIA noted that, after the IJ's decision, this court held that applicants for withholding of removal must demonstrate

that a protected ground is "at least one reason," rather than "one central reason," for their persecution. *See Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020). Nonetheless, the BIA concluded, the petitioners had failed to establish eligibility for withholding of removal because Garrido Rodriguez's particular social group was not cognizable. According to the BIA, the petitioners had failed to raise a meaningful challenge to the IJ's denial of CAT protection and had therefore waived that claim. This timely petition for review followed.

## II.

"Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual findings for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

To establish eligibility for asylum, the petitioners must show that they meet the definition of a "refugee," meaning a person unable or unwilling to return to his or her home country because of past persecution or a well-founded fear of future persecution on account of a protected ground, including membership in a particular social group. *See* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i); *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). As for withholding of removal, the petitioners must demonstrate a clear probability that, if removed to Honduras, their "life or freedom would be threatened in that country because of" a protected ground, such as membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A); *see Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). "This standard is more demanding than the standard required to establish asylum." *Bonilla-Morales*, 607 F.3d at 1138.

The petitioners based their claims for asylum and withholding of removal on Garrido Rodriguez's membership in a particular social group of persons who have worked for Ramos in a private security firm. "A 'particular social group' must meet three criteria: (1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019). "Though the determination of whether a proposed particular social group is cognizable is a legal determination, decisions as to the underlying elements are factual determinations subject to the substantial evidence standard." *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023) (internal citations omitted).

The BIA agreed with the IJ that Garrido Rodriguez's particular social group was not cognizable because it lacked social distinction. "To have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 217 (B.I.A. 2014). The petitioners argue that this group is "identifiable to would-be persecutors" given that Garrido Rodriguez received multiple, specific threats expressly based on his prior employment with Ramos. But a group's social distinction "is determined by the perception of the society in question, rather than by the perception of the persecutor." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (B.I.A. 2014). The petitioners did not present any evidence that persons who have worked for Ramos's private security firm are perceived as a distinct segment of the Honduran population. *See Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013). Accordingly, the agency's determination that Garrido Rodriguez's proposed group lacked social distinction is supported by substantial evidence.

The BIA also determined that the petitioners had failed to raise a meaningful challenge to the IJ's finding that Garrido Rodriguez's proposed group lacked particularity and had therefore waived that issue. The petitioners argue that the IJ gave no explanation as to why Garrido Rodriguez's proposed group could not "accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009) (quoting *Matter of S-E-G-*, I. & N. Dec. 579, 584 (B.I.A. 2008)). But as the government points out, the petitioners failed to raise this argument—or any other argument—about particularity before the BIA. Because the petitioners failed to exhaust their particularity argument before the BIA, we decline to consider it. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 417-19 (2013) (holding that the exhaustion requirement under 8 U.S.C. § 1252(d)(1) is not a jurisdictional requirement but is still a mandatory claims-processing rule).

Because the petitioners failed to establish Garrido Rodriguez's membership in a cognizable particular social group, their claims for asylum and withholding of removal fail. *See Umana-Ramos*, 724 F.3d at 674. The petitioners' arguments about immutability, past persecution, and internal relocation are misplaced because the BIA declined to address those arguments after determining that petitioners failed to establish their membership in a cognizable particular social group. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The petitioners do not address their claims for CAT protection, thereby waiving any challenge to the denial of those claims. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

III.

For these reasons, we **DENY** the petition for review.