NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0365n.06

Case Nos. 20-3777/4171

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 26, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LIDOLINA MARAZIEGOS-MORALES, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |

BEFORE: SUTTON, Chief Judge; COLE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Lidolina Maraziegos-Morales seeks asylum in the United States from her native country of Guatemala. Before she may lawfully enter through the American gateway, however, Maraziegos-Morales must first demonstrate severe, systemic mistreatment in Guatemala based upon a narrow range of protected grounds articulated by the legislative and executive branch. The Board of Immigration Appeals denied Maraziegos-Morales's application for asylum and withholding of removal and for protection under the Convention Against Torture, concluding that her alleged mistreatment did not rise to the level of severity required for relief under the law. Seeing no basis to question the administrative tribunal's faithful application of the immigration laws, we deny Maraziegos-Morales's consolidated petition for review.

I.

United States Border Patrol agents apprehended Lidolina Maraziegos-Morales as she illegally crossed the Mexico-United States border. As Maraziegos-Morales was seventeen years old at the time, immigration authorities, consistent with protocols for processing unaccompanied minor aliens, released Maraziegos-Morales into the custody of her older brother in Tennessee to await formal removal proceedings. When those proceedings came to pass, Maraziegos-Morales conceded her removability but requested asylum and withholding of removal under the Immigration and Nationality Act (INA), in addition to protection under the Convention Against Torture (CAT). (We pause here to note a discrepancy between the Petitioner's spelling of her last name, "Mazariegos," which is reflected by Guatemalan government documents in the record, and the spelling used by the Board of Immigration Appeals (BIA), "Maraziegos," which is reflected in our caption for this case. For the sake of consistency, we have adopted the BIA's spelling.)

Maraziegos-Morales testified that, were she returned to Guatemala, she would face persecution at the hands of MS-13 gang members. Maraziegos-Morales's chief antagonist is a MS-13 leader known as "Elvis." When Maraziegos-Morales was nine years old, Elvis grabbed her arm, pushed her to the floor, and told her that one day she would be "his." Over the years, Elvis verbally harassed Maraziegos-Morales, making lewd sexual remarks and threatening to harm her family if she did not someday acquiesce to his demands. Elvis's misdeeds did not stop there. Maraziegos-Morales testified that Elvis and his fellow MS-13 gang members also persecuted Maraziegos-Morales and her family because of their religion. The Maraziegos family identifies as Charismatic Catholics, a Catholic religious movement that adopts certain Protestant Pentecostal worship practices, including dance, song, and physical expression. Elvis and other gang members allegedly expressed contempt for these rituals. The gang went so far as to steal the group's

instruments, ransack their church, and threaten physical violence if the performances continued. When Maraziegos-Morales's father attempted to organize resistance against the gang, Elvis threatened further retribution against the Maraziegos family. Gang members eventually offered Maraziegos-Morales an ultimatum: join the gang or face violence. At that point, Maraziegos-Morales fled to the United States.

To help corroborate her story, Maraziegos-Morales provided a number of declarations and other supporting material. In two of the declarations, her father and brother recounted how Elvis harassed Maraziegos-Morales whenever he saw her in town. Maraziegos-Morales's father added that he was threatened when he attempted to rally the community to fight back against the gang. Two Guatemalan priests filed declarations detailing how MS-13 plundered their local church and harassed parishioners. And a Guatemalan attorney provided a notarized letter from members of the community corroborating Maraziegos's claim that the gang attempted to recruit her. Maraziegos-Morales also included a police report that her father filed after the gang issued their final ultimatum.

Despite finding Maraziegos-Morales to be credible, the Immigration Judge (IJ) overseeing her hearing deemed her ineligible for asylum, withholding of removal, and CAT protection. The IJ first concluded that Maraziegos-Morales's claim for asylum failed due to her inability to demonstrate either past persecution or a well-founded fear of future persecution sufficient to justify relief. Her testimony established just one incident of being pushed and grabbed over the course of eight years, along with episodic verbal harassment and threats, which the IJ deemed to be insufficient.

Maraziegos-Morales's asylum claim also failed, the IJ explained, on the independent basis that she failed to show that any persecution occurred for statutorily protected reasons. Citing

decisions from this circuit, the IJ concluded that, standing alone, Elvis's gang recruitment and extortion attempts displayed no animosity towards Maraziegos-Morales on a basis protected by the INA, and thus could not support Maraziegos-Morales's asylum claim. Likewise, Maraziegos-Morales's classification of her membership in the social group of "young Guatemalan women who oppose sexual demands by gang members" lacked the particularity required for asylum under the INA. As to Maraziegos-Morales's other asserted grounds for asylum—religion and family status—the IJ concluded that membership in these groups could qualify for protection under the INA, but that Maraziegos-Morales's corroboration lacked "sufficient detail or information . . . concerning the claims" to show that any mistreatment occurred due to these protected grounds. Finally, the IJ denied CAT protection because Maraziegos-Morales could not demonstrate a clear probability of torture to which the government would acquiesce.

The Board of Immigration Appeals adopted the IJ's reasoning in all respects and affirmed. The BIA agreed that Maraziegos-Morales established neither past persecution nor a well-founded fear of future persecution on a protected ground. The BIA similarly concluded that neither membership in a particular social group nor religious animus constituted one "central reason" for Maraziegos-Morales's alleged persecution. A.R. 76 (citing *Matter of C-T-L-*, 25 I. & N. Dec. 341 (BIA 2010)). Not long after the BIA issued its decision, however, we abrogated the Board's "one central reason" standard for withholding of removal claims under the INA, holding that the former standard must be replaced by a less stringent "a reason" test derived in accordance with the REAL ID Act. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020). On this basis, Maraziegos-Morales moved the BIA for reconsideration, which the BIA denied.

II.

Before us today are Maraziegos-Morales's petitions to review both the BIA's determination rejecting her claims as well as the BIA's determination denying reconsideration. As the BIA adopted in full the IJ's reasons for denying Maraziegos-Morales relief, we take those decisions together, "directly review[ing] the decision of the IJ while considering the additional comment made by the BIA." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citation omitted). In doing so, we review questions of law de novo and factual findings under the substantial evidence standard. *Id.* As to that deferential latter standard, we will uphold the BIA's ultimate "factual determinations [if] *any* reasonable adjudicator could have found as the agency did." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1678 (2021). Finally, we review the BIA's decision to deny reconsideration for an abuse of discretion. *See Yeremin v. Holder*, 738 F.3d 708, 718 (6th Cir. 2013).

A. Beginning with Maraziegos-Morales's claim for asylum, that manner of relief is available only to those individuals who qualify as a "refugee" within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(B)(i). The INA defines a refugee as one "unable or unwilling" to return to her home country because of persecution or a "well-founded fear" of future persecution "on account of" at least one of five enumerated grounds: "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). The asylum applicant bears the burden of proving both the persecution aspect of her claim and that the persecution so established is "on account of" one of the enumerated grounds. *See* 8 C.F.R. § 1208.13(a).

Maraziegos-Morales comes up short on both fronts. Starting with persecution, substantial evidence supports the BIA's conclusion that Maraziegos-Morales has not demonstrated past harm rising to the level of persecution. The INA leaves the term "persecution" undefined. To fill that

interpretive gap, we have explained that the term embodies an "extreme concept," one "that does not include every sort of treatment our society regards as offensive." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (quoting *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004)). Rather, "[o]nly threats of a most immediate and menacing nature can possibly qualify as past persecution." *Id.* at 701 (internal quotations and citation omitted); *see also Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998) (explaining that persecution entails "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty").

The IJ's factfinding leaves little doubt that Elvis and his gang subjected Maraziegos-Morales, her family, and members of her church to pernicious verbal harassment and violent threats. But at no point, the IJ found, were those threats acted upon. Maraziegos-Morales alleged just one physical altercation with Elvis over an eight-year span; her brother also acknowledged once being punched in the stomach by Elvis. Whatever the metes and bounds of the term "persecution," the BIA and IJ could safely conclude that these twin acts did not constitute the kind of "extreme" systemic mistreatment that the term embodies. *See Thapa v. Holder*, 572 F. App'x 314, 320–21 (6th Cir. 2014) (finding that a series of verbal threats and several targeted robberies did not amount to persecution). And while Maraziegos-Morales contends that she was "frequently sexually assaulted" by Elvis, the record does not support that assertion.

Nor has Maraziegos-Morales demonstrated a well-founded fear of future harm. To do so, Maraziegos-Morales must show a "real threat of *individual* persecution" above and beyond a "general, speculative assertion of fear." *Marikasi v. Lynch*, 840 F.3d 281, 291–92 (6th Cir. 2016) (citation omitted). The threat must cultivate fear that is subjectively genuine and objectively reasonable. *Dieng v. Holder*, 698 F.3d 866, 873 (6th Cir. 2012). The IJ found that Maraziegos-

Morales lacked an objectively well-founded fear of persecution, chiefly because the record showed no evidence that a member of the Maraziegos family had suffered any harm since Maraziegos-Morales's departure from Guatemala. *See Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001) (finding an applicant's fear of future persecution to be unreasonable in part because similarly situated family members continued to live in the country without incident). That finding alone defeats Maraziegos-Morales's claim. And it is consistent with United Nations and State Department reports the IJ cited attesting to the Guatemalan government's anti-gang initiatives in communities throughout Guatemala. In short, substantial evidence supports the determination that Maraziegos-Morales has not alleged an objectively well-founded fear of future persecution.

Even had she done so, Maraziegos-Morales has not shown that her persecution occurred "on account of" one of the protected grounds enumerated by the INA. 8 U.S.C. § 1101(a)(42)(A). Here, Maraziegos-Morales first claims that she was persecuted due to her "membership in a particular social group," as that phrase is used in the INA. *Id*. In the absence of a statutory definition of that phrase, the BIA as well as our precedent has steadily required that any claimed social group possess the qualities of "(1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019). With these considerations in mind, we are reluctant to accept Maraziegos-Morales's categorization of "young Guatemalan women who oppose sexual demands by gang members" as a qualifying social group based on this record. Maraziegos-Morales's definition lacks discrete and socially perceptible characteristics that distinguish the group from all other Guatemalan women. *See Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005). Indeed, the group's only seemingly unifying characteristic is that each

member faces the same persecution for rejecting gang advances, a feature that we have routinely held fails to satisfy the INA's particularity requirement. *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011); *see, e.g.*, *Umana-Ramos v. Holder*, 724 F.3d 667, 673–74 (6th Cir. 2013) (holding that "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" does not amount to a particular social group); *Juan-Mateo v. Sessions*, 729 F. App'x 446, 448–49 (6th Cir. 2018) (holding that "women who oppose gangs in Guatemala" does not amount to a particular social group); *Escobar-Batres v. Holder*, 385 F. App'x 445, 447 (6th Cir. 2010) (holding that "Salvadoran teenage girl[s]" targeted for recruitment by the Maras does not amount to a particular social group).

Maraziegos-Morales's other claimed grounds for asylum—her membership in "the Maraziegos family" and her "Charismatic Catholic" religion—fail for want of a nexus to the alleged persecution. True, those proposed groups fit more comfortably within the established requirements for asylum protection. 8 U.S.C. § 1101(a)(42)(A) (identifying religion as a protected ground); *Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009) (recognizing a family as a "particular social group"). But here, these proposed social groups fail for another reason: the evidence does not compel us to conclude that any mistreatment experienced by those groups was "on account of" their protected status. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 500 (6th Cir. 2015). As the BIA observed, it is "unclear" whether Elvis's harassment occurred as a result of animus towards the Maraziegos family, Charismatic Catholics, or for some other reason. Elvis never specifically mentioned religious or family-based animus towards Maraziegos-Morales. And the IJ found it equally plausible that Elvis's motivations "may have been to recruit new members into his gang, romantic in nature, or driven by a personal dispute." It is similarly unclear whether MS-13 targeted the Maraziegos family or Charismatic Catholics with any terror beyond what they

regularly inflicted upon the rest of the community. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010) ("Asylum is not available to victims of indiscriminate violence, unless they are singled out on account of a protected ground."). All things considered, Maraziegos-Morales has not demonstrated her entitlement to asylum before the BIA.

*      *      *      *      *

While not dispositive here, we acknowledge a shift in the legal landscape that followed the BIA's decision. By way of background, in 2018, Attorney General Sessions issued his decision in *Matter of A-B-*, which, among other things, set a more stringent standard for establishing persecution in the asylum context based on membership in a particular social group. *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018); *see also Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) (clarifying aspects of the original *Matter of A-B-*). Attorney General Garland, however, recently vacated *Matter of A-B-*. *See Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021). In doing so, Attorney General Garland directed "immigration judges and the Board [to] follow pre-*A-B-*[] precedent," and foreshadowed forthcoming rulemaking to clarify application of the Justice Department's asylum regulations. *Id.* In some circumstances, remand back to the BIA may be necessary where the BIA relied extensively on the now-vacated *A-B-* decision to foreclose an applicant's asylum claim. *See Corea v. Garland*, --- F. App'x ---, 2021 WL 2774260, at *4 (6th Cir. July 2, 2021). Here, however, the BIA cited *A-B-* only for the general proposition that "consistent with the regulations," the BIA must consider whether internal relocation was reasonable before granting asylum. *A-B-* was also a bit player in the IJ's underlying decision, which cited *A-B-* as simply reaffirming pre-*A-B-* case law on the criteria comprising particular social groups. Critically, the BIA's ultimate conclusion that Maraziegos-Morales failed to

9

demonstrate any harm rising to the level of persecution turned almost exclusively on pre-*A-B-* precedent. As a result, remand is not required.

B. Maraziegos-Morales's remaining claims for relief meet a similar fate. Starting with her claim for withholding of removal, to be eligible for that form of relief under the INA, Maraziegos-Morales must show a "clear probability of persecution" upon removal. *Al-Ghorbani*, 585 F.3d at 993–94; *see* 8 U.S.C. § 1231(b)(3)(A). Because Maraziegos-Morales's claim for asylum failed to satisfy the lower "well-founded fear" of future persecution standard applicable to asylum claims, her claim for withholding of relief necessarily fails under this higher standard. *See Marikasi*, 840 F.3d at 291–92.

So too for her CAT claim. To be eligible for CAT protection, Maraziegos-Morales must show that it is more likely than not that she would experience "torture" upon her repatriation by or with the acquiescence of the Guatemalan government. 8 C.F.R. §§ 1208.16(c), 1208.18(a); *Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007). She has not done so. The basis for her assertion that the Guatemalan government would acquiesce to her future "torture" is a lone police report filed against Elvis coupled with her apparent belief that the police were unwilling to control Elvis's gang. That report and Maraziegos-Morales's general sentiment, however, do not compel the conclusion that Maraziegos-Morales is more likely than not to be tortured upon her return, let alone with government acquiescence. *See Bravo-Domingo v. Barr*, 806 F. App'x 443, 449 (6th Cir. 2020) (concluding that no government acquiescence occurred even where police "continually" failed to assist with threats from Guatemalan gangs). As to that latter element, we note that with Maraziegos-Morales having fled Guatemala shortly after the police report was filed, it is unclear whether the Guatemalan government would have entirely ignored the matter had she stayed, as she contends, or would do the same in the future.

C. That leaves Maraziegos-Morales's claim that the BIA abused its discretion by denying her motion for reconsideration in light of *Guzman-Vazquez* abrogating the "one central reason" test for withholding of removal claims under the INA. 959 F.3d at 271–72. In light of *Guzman-Vazquez*, it appears that the BIA applied an outdated standard when analyzing Maraziegos-Morales's claims. In this setting, an intervening change in law may be a basis for reconsideration. *Sunarto v. Mukasey*, 306 F. App'x 957, 960–61 (6th Cir. 2009). But the BIA adequately explained why reconsideration was not warranted here. Whatever *Guzman-Vazquez*'s impact on claims seeking withholding of removal, the standard announced there applies only in answering the nexus question: Was membership in a protected social group "a reason" for the persecution? 959 F.3d at 270–72. And that question necessarily presupposes that some "persecution" occurred. Yet Maraziegos-Morales failed to clear this threshold hurdle, as the BIA recognized, because she "did not establish that she experienced mistreatment in Guatemala that rises to the level of persecution." What's more, Maraziegos-Morales failed to put forth sufficient evidence tending to establish that an INA-protected ground served as "a reason" for Elvis's harassment. Accordingly, the BIA did not abuse its discretion by declining to apply a standard that would have afforded Maraziegos-Morales no relief.

\* \* \* \* \*

The consolidated petition for review is denied.

11