[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10724
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 8, 2010
JOHN LEY
CLERK

Agency No. A098-739-303

JAI LOK LING,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 8, 2010)

Before EDMONDSON, BLACK and ANDERSON, Circuit Judges.

PER CURIAM:

Jai Lok Ling, a native and citizen of Malaysia, petitions for review of the Board of Immigration Appeals' (BIA's) final order affirming the Immigration Judge's (IJ's) denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), 8 U.S.C. §§ 1158, 1231(b)(3)(A); 8 C.F.R. § 208.16(c). Ling contends the BIA's decision denying his claim for withholding of removal and CAT relief is not supported by substantial evidence.[1] After review, we deny Ling's petition.[2]

Ling contends he was harmed in Malaysia because of his membership in a particular social group—business owners owing money to loan sharks. He sets forth various reasons why this group is cognizable as a particular social group. Consequently, he argues, he has established the past harm he suffered had a nexus to a protected ground. Ling further contends that he is entitled to CAT relief

---

[1] In his brief to this Court, Ling does not challenge the denial of his asylum claim, and has thus abandoned it. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[2] We review only the BIA's decision as the final judgment, but to the extent the BIA has adopted the IJ's reasoning, we review the IJ's decision as well. *Al-Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ's and the BIA's factual determinations under the highly deferential substantial-evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350-51 (11th Cir. 2009). Under the substantial-evidence test, we may reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004). We review the IJ's and the BIA's legal conclusions *de novo. Kazemzadeh*, 577 F.3d at 1350.

because the harm he would encounter would constitute torture by the Malaysian government or at the acquiescence thereof.[3]

## I.

To qualify for withholding of removal, an alien must show that, if returned to his country, the alien's life or freedom would be threatened on account of a protected ground, namely, race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). An alien may make such a showing in one of two ways. "First, an alien may establish past persecution in [his] country based on a protected ground." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (quotation omitted). Such past persecution creates a rebuttable presumption that the alien has a "well-founded fear of future persecution." *Id.* (citation omitted). Second, an alien can show that "it is more likely than not" that he would be persecuted on account of a protected ground upon return to his country. *Id.* (quoting 8 C.F.R. § 208.16(b)(2)).

---

[3] Ling acknowledges the BIA issued its decision solely on the lack of a nexus to a protected ground. However, he addresses other issues "[i]n the event this Court determines it has jurisdiction" to review them. Here, the BIA agreed with the IJ's conclusion that Ling was ineligible for withholding of removal because Ling "has not established a nexus between his experiences in Malaysia and an enumerated ground," and expressly adopted the IJ's reasons for rejecting Ling's proposed social group. The BIA also decided Ling failed to establish eligibility for CAT protection. Therefore, we review only the IJ's and the BIA's finding that Ling did not establish membership in a particular social group and its conclusion that Ling does not qualify for CAT relief. *See Al-Najjar*, 257 F.3d at 1284.

In determining whether persecution is based on a protected ground, specifically a particular social group, we have deferred to the BIA's following interpretation:

> '[P]ersecution on account of membership in a particular social group' . . . mean[s] persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership. The particular kind of group characteristic that will qualify under this construction remains to be determined on a case-by-case basis. However, whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

*Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 446-47 (BIA 1987); *see also Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006) (deferring to the BIA's *Acosta* formulation of a "particular social group"). Furthermore, the group must have sufficient social visibility and should not be defined so broadly that it becomes "a catch-all for all groups who might claim persecution." *Castillo-Arias*, 446 F.3d at 1197-98. For example, in *Castillo-Arias*, we held non-criminal informants working against a Colombian drug cartel were not a particular social group because they lacked the requisite social visibility, the group was too numerous and inchoate, and the group's defining

4

attribute was its persecution by the cartel. *Id.* at 1197-99; *see also In re A-M-E &
J-G-U-*, 24 I. & N. Dec. 69, 75-76 (BIA 2007) (holding "affluent Guatemalans"
are not a particular social group because they lack social visibility, being no more
exposed to violence than other members of society, and also lack particularity,
since the term "affluent" is "too amorphous to provide an adequate benchmark for
determining group membership").

Substantial evidence supports the conclusion that Ling failed to establish
persecution based on membership in a particular social group. Being a former
business owner who owes money to loan sharks is not an innate, immutable
characteristic or a shared past experience. *See Acosta*, 19 I. & N. Dec. at 233. In
fact, such business owners are very similar to the non-criminal informants in
*Castillo-Arias*, who this Court found not to constitute a particular social group,
because business owners owing money to loan sharks lack social visibility, are too
numerous and inchoate, and their defining attribute is persecution by the loan
sharks. *See Castillo-Arias*, 446 F.3d at 1197-99.

Specifically, business owners who owe money to loan sharks do not enjoy
high social visibility because loans sharks' activities "tend to be criminal in nature
and are often conducted secretly." *See Castillo-Arias*, 446 F.3d at 1197
("[I]nformants who remain anonymous are not visible enough to be considered a

5

'particular social group,' as the very nature of the activity prevents them from being recognized by society at large."). Moreover, as the IJ found, business owners "come from all segments of society and are a diverse group." Thus, like the informants in *Castillo-Arias*, business owners who owe money to loan sharks are "too numerous or inchoate" to qualify for a particular social group. *Castillo-Arias*, 446 F.3d at 1198. Finally, the defining attribute of Ling's proposed group is its persecution by the loan sharks, but the "risk of persecution alone does not create a particular social group." *Id.* Ling presented no evidence the loan sharks would treat business owners "any differently from any other person" who owed them money, and "virtually the entire population of [the country] is a potential subject of persecution" by the loan sharks. *Id.* at 1198. In other words, without the loan sharks in the equation, Ling's group of business owners does not have a more definable trait than any other class of citizens in Malaysia, however described.

Ling argues he cannot change the fact that he was a business owner and borrowed money from loan sharks. However, the same can be said about informants in *Castillo-Arias*, who could not change the fact of their having been informants, yet still did not qualify as a particular social group. *See Castillo-Arias*, 446 F.3d at 1198. Therefore, Ling failed to establish membership in a

6

particular social group and, consequently, no nexus exists between Ling's alleged persecution and a protected ground.  Thus, substantial evidence supports the BIA's denial of withholding of removal

## II.

To qualify for CAT protection, the petitioner must show that, "more likely than not," he would be tortured "at the instigation of or with the consent or acquiescence of" government authorities if removed to his home country.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)).  Unlike withholding of removal, CAT relief does not require membership in a particular social group or other protected ground.  *See* 8 C.F.R. § 208.16(c).

Ling offered no evidence to show he would be tortured by, or with the acquiescence of, the government.  At most, Ling's testimony and documentary evidence show Malaysian authorities have trouble controlling the loan sharks and may not respond quickly enough to calls for help.  However, this Court has explicitly suggested that mere inability of the government to deal with alleged persecutors is not enough to constitute the "acquiescence" necessary for CAT relief.  *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004) ("That the police did not catch the culprits does not mean that they acquiesced in

the harm.").  Accordingly, substantial evidence supports the BIA's denial of CAT

relief, and we deny Ling's petition.

**PETITION DENIED.**