RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JONATHAN CRUZ-GUZMAN,

                                                        *Petitioner*,

                        *v.*

                                                                            No. 18-3520

WILLIAM P. BARR, Attorney General,

                                                        *Respondent*.

On Petition for Review from the Board of Immigration Appeals;
No. A 208 280 977.

Decided and Filed:  March 15, 2019[*]

Before:  BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Jamie B. Naini, THE LAW OFFICES OF JAMIE B. NAINI, Memphis, Tennessee, for Petitioner.  Holly M. Smith, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

THAPAR, Circuit Judge.    Jonathan Cruz-Guzman seeks review of a Board of Immigration Appeals order denying his application for asylum.  We deny his petition.

---

[*]This decision was originally filed as an unpublished opinion on March 15, 2019.  The court has now designated the opinion for publication.

I.

Cruz is a native of El Salvador.**¹**  He grew up in a neighborhood dominated by a gang known as 18th Street.  18th Street's rival gang, MS-13, sought to recruit Cruz and his friends to join MS-13 as "spies" so they could relay information about 18th Street activities in the area.  After they refused, MS-13 began threatening and assaulting them.  This harassment culminated when members of MS-13 murdered Cruz's friend Brian.  Later that week, one of them told Cruz "if [he] was just as stupid as Brian, then the same thing would happen to [him]."  AR 243.  Shortly after this threat, Cruz fled El Salvador.

Immigration authorities apprehended Cruz upon his entry into the United States near Hidalgo, Texas.  In his deportation proceeding, Cruz conceded that he was subject to removal but sought asylum based on his fear of gang violence if he returned home.  While his asylum application was pending, his friends and family in El Salvador faced continued threats and violence.  MS-13 killed one friend, while 18th Street killed another.  Both gangs extorted protection money from Cruz's mother.  When she missed a payment to 18th Street, members of the gang broke into her house, beat her, and threatened to rape Cruz's sister.

During Cruz's asylum hearing, he detailed the violence and harassment he, his family, and his friends had all faced in El Salvador.  He explained that he feared further violence from both MS-13 and 18th Street if he returned home:  MS-13 because of his refusal to join them, and 18th Street as punishment for his mother's refusal to pay protection money.  While the Immigration Judge found Cruz's testimony credible, she denied Cruz's asylum application because, among other things, Cruz failed to establish that he faced this persecution "on account of" a protected ground.  8 U.S.C. § 1101(a)(42)(A).  Accordingly, the judge ordered Cruz removed to El Salvador.

Cruz appealed to the Board of Immigration Appeals (the "Board"), which affirmed.  Cruz then petitioned for review in this court.  We have jurisdiction to review the Board's decision under 8 U.S.C. § 1252.  We review administrative factual findings under the deferential

---

**¹**All names are spelled as they appear in Petitioner's brief.

substantial-evidence standard:  we accept them "unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* § 1252(b)(4)(B).

## II.

The Attorney General may grant asylum to an applicant who proves he is a "refugee."  *Id.* § 1158(b)(1)(A).  A "refugee" is an individual who, based on his "membership in a particular social group" (or other protected status), faces "a well-founded fear of persecution" if he returns to his home country.  *Id.* § 1101(a)(42)(A).  The applicant must show that the claimed persecution will be inflicted by "the government or persons a government is unwilling or unable to control."  *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *In re Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996)).  An applicant presumptively has a "well-founded fear of persecution" if he shows that such persecution has already happened to him before.  8 C.F.R. § 1208.13(b)(1).  Thus, asylum cases often depend on an evaluation of past events.

Cruz claims to have a well-founded fear of persecution based on his membership in three purported social groups:  (1) males who are targeted by MS-13 to work as informants, (2) individuals MS-13 thinks are members of 18th Street, and (3) the Cruz-Guzman nuclear family unit.  To succeed, Cruz must show that at least one of these purported social groups exists, he is a member of it, and he faces persecution motivated by that membership.  8 U.S.C. § 1101(a)(42)(A); *see also Zaldana Menijar v. Lynch*, 812 F.3d 491, 498, 500 (6th Cir. 2015).  The Board found that (1) "males who are targeted by MS-13 to work as informants" does not qualify as a social group, (2) "imputed 18th Street members" may be a social group, but Cruz failed to show that MS-13 actually imputed membership in 18th Street to him, and (3) the Cruz-Guzman family is a social group and Cruz is a member, but he failed to show that his association with his family would motivate any persecution.  We review each of these findings in turn.

## A.

We first address whether Cruz is a member of a "particular social group."  8 U.S.C. § 1101(a)(42)(A).  A "particular social group" must meet three criteria: (1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group

as a distinct class of persons). *Zaldana Menijar*, 812 F.3d at 498; *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237–40 (BIA 2014).

The Board found that Cruz's first purported social group—males targeted by MS-13 to work as informants—did not satisfy the "social distinction" requirement. Rightly so. This court has already rejected the claim that individuals targeted to join MS-13 qualify as a socially distinct group. *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) ("[Asylum applicant]'s proposed particular social group of 'young Salvadorans who have been threatened because they refused to join the MS[-13] gang' is not cognizable under the INA." (internal alteration omitted)). No meaningful difference exists between individuals targeted by MS-13 to join their gang and individuals targeted by MS-13 to join their gang *as informants*. Salvadorans do not appear to see a meaningful difference either. The affidavits Cruz submitted from family and friends do not indicate that they see this distinction; instead, they mention threats from MS-13 recruitment in general. And the reports Cruz cites (authored by Americans, not Salvadorans) mention violence against would-be informants either in passing or not at all. In short, Cruz's purported social group relies on a "distinction without a difference" and does not qualify under the asylum statute. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015).

Cruz's second purported social group is imputed gang membership. Specifically, Cruz contends that because he lived and attended school in a neighborhood controlled by 18th Street, their MS-13 rivals would view Cruz as a member of that gang. The Board correctly determined that, even if this social group exists, Cruz failed to demonstrate that he was a member of it. As the Board found, Cruz's imputed gang membership argument contradicts his first claimed social group. MS-13 attempted to recruit him *precisely because* MS-13 thought he was unaffiliated with 18th Street and thus would be willing and able to spy on them. Logically, then, MS-13 did not impute 18th Street membership to him. Cruz responds that gangs attempt to recruit directly from the ranks of their rivals, citing evidence that MS-13 generally views residents of 18th Street neighborhoods as members of that gang. But there was still substantial evidence for the Board to

conclude that MS-13 did not view Cruz as an 18th Street member.**²**  Accordingly, Cruz cannot qualify for asylum on the basis of imputed 18th Street membership.

That leaves Cruz with one final potential social group:  his own nuclear family unit.  The Board assumed that direct familial ties can create a qualifying "particular social group" and that Cruz is, by definition, a member of that group.  *See Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009) (noting that "membership in the same family . . . is widely recognized by the caselaw" as a "particular social group").

B.

Although Cruz can show that he has a "well-founded fear of persecution" and that he belongs to a particular social group, he needs to also connect these two concepts.  Under the statute he must show that his membership in the Cruz-Guzman family is "one central reason" for the persecution.  8 U.S.C. § 1158(b)(1)(B)(i).  This is a question of motive, not just simple causation.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); *Harmon v. Holder*, 758 F.3d 728, 735–36 (6th Cir. 2014).  The Board can find a persecutor's motive by "connect[ing] the dots of circumstantial evidence." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 595 (6th Cir. 2010).  "But to say that the Board *could* find circumstantial proof of persecution in a given case is not to say that it *must*," and we can only reverse the Board if the latter is true.  *Id.* at 595–96 (emphasis added); *see* 8 U.S.C. § 1252(b)(4)(B); *see also Zaldana Menijar*, 812 F.3d at 499 n.4.  Here, the Board did not find sufficient evidence of motive.  Cruz has not shown that the record compels the opposite conclusion.

Cruz bases his family-unit-persecution claim on a dispute between his mother and 18th Street.  Sometime after Cruz left El Salvador, 18th Street began extorting protection money from his mother.  When she missed a payment, members of the gang broke into her home, beat her,

---

**²**Cruz also points to one particular encounter with MS-13 members in a different neighborhood.  But if anything, Cruz's example contradicts his claim of imputed gang membership.  As the Immigration Judge concluded, these MS-13 members were "suspicious" but "ultimately did not attribute 18[th Street] gang membership to [Cruz]." AR 92.  Cruz argues "it was only a matter of time before the gang found out that [he] lived in 18th Street Gang territory" given MS-13's ability to communicate between neighborhoods with cell phones.  Petitioner Br. at 23.  But this is merely an alternative—and speculative—view of the evidence.  Given that MS-13 members whom Cruz saw every week clearly did not impute 18th Street membership to him, Cruz's single run-in with other MS-13 members does not clearly show imputed gang membership.

and threatened to rape her daughter (Cruz's sister). They also indicated that they knew Cruz was her son and that he was in the United States. Cruz's mother subsequently fled to Mexico. Now, Cruz fears that if he returns, 18th Street will harm him because they cannot get to his mother.

Cruz's evidence does not show that 18th Street's actions were motivated by a particular animus toward the Cruz-Guzman family itself, as opposed to an ordinary criminal desire for financial gain. As the Immigration Judge found, criminal motivations like this apply against "virtually the entire population of El Salvador." AR 91. This court has consistently upheld decisions by the Board denying asylum when the more likely explanation for persecution was basic criminality as opposed to membership in a social group or other protected status. *Khozhaynova v. Holder*, 641 F.3d 187, 196 (6th Cir. 2011) (finding that an asylum applicant had "failed to connect the [persecution] to anything more than the financial demands of criminal corruption"); *see also Zaldana Menijar*, 812 F.3d at 500–01. Other courts have applied the same logic when the protected ground at issue is membership in a family unit. *See, e.g.*, *Cambara-Cambara v. Lynch*, 837 F.3d 822, 826 (8th Cir. 2016) (rejecting asylum claim where applicant "provided no proof that the criminal gangs targeted members of the family *because* of family relationships, as opposed to the fact that . . . they were obvious targets for extortionate demands"); *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492–93 (5th Cir. 2015); *see also Matter of L-E-A-*, 27 I&N Dec. 40, 45–47 (BIA 2017) ("The fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim, especially if the end is not connected to another protected ground."). The Board concluded that Cruz had failed to show that 18th Street was motivated by particular animus toward his family, as opposed to generally applicable financial desires. The record does not compel the opposite conclusion.

\*     \*     \*

In sum, Cruz has not shown that he has a well-founded fear of persecution on account of a protected ground, which means he is not a "refugee" under the statute, and his asylum claim fails. 8 U.S.C. § 1101(a)(42)(A). Accordingly, we need not address Cruz's remaining arguments that the Salvadoran government is unable or unwilling to control his persecutors and that internal relocation would be unreasonable under 8 C.F.R. § 1208.13(b)(1)(i)(B). The petition for review is denied.