RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BHAVANABEN DINESHKUMAR PATEL; DINESHKUMAR
MADHAVLAL PATEL; ILEN PATEL; DEEP PATEL,
*Petitioners*,

*v.*

PAMELA BONDI, Attorney General,
*Respondent*.

No. 24-3614

─────────────────

Appeal from the Board of Immigration Appeals.
Nos. A 206 355 092; A 206 355 093; A 206 355 094; A 206 355 095.

Decided and Filed: March 11, 2025

Before: McKEAGUE, KETHLEDGE, and READLER, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ON BRIEF:** Margaret W. Wong, MARGARET WONG & ASSOCIATES LLC, Cleveland, Ohio, for Petitioners. BROOKE M. MAURER, United States Department of Justice, Washington, D.C., for Respondent.

─────────────────

**OPINION**

─────────────────

CHAD A. READLER, Circuit Judge. Bhavanaben Patel petitions on behalf of herself, her husband, and her two sons to review the Board of Immigration Appeal's decision rejecting their applications for asylum, withholding of removal, and protection under the Convention Against Torture. Seeing no error in the Board's decision, we deny the petition.

**I.**

Roughly a decade ago, Bhavanaben Patel, a native of India, lived in the state of Gujarat, along with her husband Dinesh and her two sons.  While there, her husband amassed considerable debt owed to local loan sharks.  When that debt was not repaid, the family was subjected to numerous forms of coercion from their lenders, including threats to kill Dinesh and kidnap the Patels' two children.  Out of concern that they lacked any "legal proof" of these tactics, the Patels never reported the loan sharks' actions to local authorities.  Before any of those threats ever came to fruition, the family fled India for the United States.

Because the family arrived in the United States without a visa or any other permission to enter, the Department of Homeland Security immediately pursued their removal.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Bhavanaben in turn sought asylum and withholding of removal for the family under the Immigration and Nationality Act (INA), as well as Convention Against Torture (CAT) protection, all under the theory that the Patels could not return to India without harm at the hands of the loan sharks.  After conducting a hearing and considering evidence submitted by the government and the Patels, an immigration judge denied the family relief from removal on the three grounds asserted.  The Patels appealed that decision to the Board.  But they fared no better there, with the Board dismissing their appeal.  The Patels then petitioned this Court to review the Board's order.

**II.**

We review the Board's legal determinations de novo and its factual findings for substantial evidence.  *See Hernandez-Hernandez v. Garland*, 15 F.4th 685, 687 (6th Cir. 2021).  The Board's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

Start with the asylum and withholding claims—two related, but distinct forms of relief under the INA.  *See Vasquez-Rivera v. Garland*, 96 F.4th 903, 907–08 (6th Cir. 2024).  Both afford relief from removal based on a "nexus" between a noncitizen's risk of persecution in the country of removal and their membership in a protected group, including a "particular social group."  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i) (asylum); *id.* § 1231(b)(3)(A)

(withholding of removal).  But they differ in certain respects.  *See, e.g.*, *Vasquez-Rivera*, 96 F.4th at 907–08 (comparing the "more forgiving asylum standard" governing the risk of future persecution relative to the analogous withholding standard); *Mapouya v. Gonzales*, 487 F.3d 396, 413–14 (6th Cir. 2007) (recognizing that withholding is mandatory, while asylum is discretionary); *Garcia v. Sessions*, 856 F.3d 27, 32 (1st Cir. 2017) (discussing the "distinct types of benefits" that withholding and asylum afford).

One point of comparison is the nexus requirement under each form of relief.  An asylum applicant's membership in a protected group must be "one central reason" for persecution.  8 U.S.C. § 1158(b)(l)(A)–(B)(i).  A withholding applicant, on the other hand, must show that his risk of persecution is "because of" his protected status.  *Id.* § 1231(b)(3)(A).  The majority approach across the circuits is to treat these phrases as synonymous.  *See Diaz-Hernandez v. Garland*, 104 F.4th 465, 476–77 (4th Cir. 2024) (requiring a withholding applicant to satisfy the same "one central reason" standard as an asylum applicant); *Pazine v. Garland*, 115 F.4th 53, 69 & n.11 (1st Cir. 2024) (same); *Quituizaca v. Garland*, 52 F.4th 103, 114 (2d Cir. 2022) (same); *Gonzales-Posadas v. Att'y Gen. U.S.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015) (same); *Vazquez-Guerra v. Garland*, 7 F.4th 265, 271 (5th Cir. 2021) (same).  Yet our circuit understands withholding's nexus requirement to be less stringent than the asylum standard, requiring that the withholding applicant show merely that the protected status is "at least one reason" for the feared prosecution.  *See Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020).  One can fairly question that conclusion.  *See Vasquez-Rivera*, 96 F.4th at 910.  Nonetheless, the difference in the nexus standard matters little when substantial evidence supports the Board's finding of "no nexus at all between" the risk of future persecution and a claimant's membership in a protected class.  *Sabastian-Andres v. Garland*, 96 F.4th 923, 931 (6th Cir. 2024) (affirming denial of withholding and asylum claims "even under the more lenient nexus standard" created by *Guzman-Vazquez*).

Consider then the Board's findings on the Patels' claims for relief under the INA.  The family's claims are all premised on the contention that they would face future persecution in India because of their membership in two particular social groups: "victims of government-sanctioned extortion" and "victims of threats, extortion, and kidnapping by loan sharks."  As a

starting point, the Board had well-taken concerns about whether these are cognizable particular social groups. *See, e.g.*, *Rodrigues v. U.S. Att'y Gen.*, 763 F. App'x 831, 835 (11th Cir. 2019) (per curiam) (rejecting as a particular social group "loan-shark victims whom 'the authorities will or do not protect'"); *Veras-Hernandez v. Sessions*, 742 F. App'x 526, 528 (2d Cir. 2018) (order) (similar); *Ling v. U.S. Att'y Gen.*, 404 F. App'x 426, 429–30 (11th Cir. 2010) (per curiam) (similar)  But even setting those apprehensions aside, a reasonable adjudicator would nonetheless not be compelled to disagree with the Board's conclusion regarding the absence of a connection between the Patels' membership in their claimed groups and their risk of future persecution.  Nexus, it bears reminding, "is a question of motive, not just simple causation." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019) (citations omitted).  Accordingly, the Patels needed evidence that the loan sharks' persecution was "motivated by a particular animus toward [the group of loan shark victims] itself"—that is, a desire to harm loan-shark victims for the reason that they are loan-shark victims—and not a more general reason, such as the "ordinary criminal desire for financial gain." *Id.*

The record presented to the Board contained no such evidence.  Nothing suggests that a reason the loan sharks threatened the Patels was because the family were loan-shark victims.  Instead, the record uniformly shows that they did so to get the money they felt Dinesh owed them.  As unwelcome as those threats might have been for the family, they lack any connection to their membership in a purported protected class of people.  Instead, "the more likely explanation for persecution was basic criminality," *Cruz-Guzman*, 920 F.3d at 1038, a reality that precludes both asylum and withholding of removal, *see Sabastian-Andres*, 96 F.4th at 931.

Turn to the remaining claims for CAT protection.  To obtain CAT relief, the Patels need to show that it is more likely than not that they would face a "particularized and likely threat of torture [by] a public official, or with the consent or acquiescence of a public official." *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020); 8 C.F.R. § 1208.16(c)(2).  Because the Patels' CAT claims are based on local officials ignoring threats from a nongovernmental entity (i.e., the loan sharks), they must show that a public official would acquiesce to the loan sharks' conduct.  Acquiescence, in turn, requires demonstrating a likelihood that public officials, aware of the risk

of torture, would shirk their duties to intervene and prevent such activity. *See Mateo-Esteban v. Garland*, 125 F.4th 762, 768 (6th Cir. 2025) (citing 8 C.F.R. § 1208.18(a)(7)).

There are several problems with the Patels' CAT claims. Most obviously, the Patels never reported any of the threats they received from the loan sharks to local authorities, making it difficult to fault the Board for finding no government acquiescence to a known risk of torture. Indeed, failure to inform authorities of threats by potential torturers typically dooms a CAT claim, as such evidence signals "that the government did not turn a willfully blind eye to the applicant." *Id.* (quoting *Sabastian-Andres*, 96 F.4th at 931). True, this failure can be overcome with "additional evidence" that conclusively shows the government would not "have responded to the call of duty" and instead would have "acquiesce[d] in [the] violence" against the claimants. *See Sabastian-Andres*, 96 F.4th at 931–32 (citations omitted) (acknowledging that a "[f]ailure to inform the authorities" is not dispositive but denying petition when the record evidence simply provided competing "narratives" about state action). But the Patels' additional evidence falls short many times over.

For one, the supporting evidence consists uniformly of generic country reports that detail harassment by money lenders against borrowers and the inability of Indian officials to combat such conduct. But our precedent demands more than "general evidence" of country conditions; we require specific proof that the government officials will acquiesce with respect to any attempted torture of the claimants. *See Vasquez-Rivera*, 96 F.4th at 911; *Turcios-Flores v. Garland*, 67 F.4th 347, 359 (6th Cir. 2023); *Yousif v. Garland*, 53 F.4th 928, 937 n.5 (6th Cir. 2022). Here, that would require some evidence concerning the Patels' circumstances in their village in Gujarat, on which the country conditions reports do not specifically opine.

And even then, evidence of a country's simple "inability" to control a perceived threat "does not constitute acquiescence." *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 497, 502 (6th Cir. 2015). Put differently, substantial evidence that a country is "trying to prevent" the applicant's torture suffices to defeat a claim of governmental acquiescence, "even if [the government] fail[s]" in specific cases. *Turcio-Flores*, 67 F.4th at 359; *accord Mateo-Esteban*, 125 F.4th at 768. Here, the record contains sufficient evidence of India's efforts against loan sharks. In the end, a reasonable adjudicator faced with the record before the Board would not be

compelled to find that Indian authorities were more likely than not to acquiesce in any future torture of the Patels.

\*      \*      \*      \*      \*

For these reasons, we deny the petition for review.