NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0513n.06

Case No. 25-3195

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ELVIA ROMERO MORALES; M.J.A.R. (a minor child), | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES |
| v. | ) ) | BOARD OF IMMIGRATION APPEALS |
| PAMELA J. BONDI, Attorney General, | ) ) | OPINION |
| Respondent. | ) | |

Before: SILER, KETHLEDGE, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Elvia Romero Morales and her minor daughter, M.J.A.R., seek review of a final order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an Immigration Judge's ("IJ") denial of their application for asylum and withholding of removal. We deny the petition for review.

**I.**

Romero Morales and M.J.A.R. are citizens of Guatemala. They lived there until 2017, when they fled to the United States after troubling incidents took place at Romero Morales's small diner.

In July 2017, two men walked into Romero Morales's diner while she was alone and demanded that she give them what amounted to over half of her earnings every day or else they would kill her. As Romero Morales explained that she did not have any money to give, some customers entered the diner, and the two men left. The threat frightened her.

The same men returned eight days later, again attempting to extort Romero Morales. During this second encounter, Romero Morales was working alongside her daughter, whom the men soon noticed and recognized. After Romero Morales told the men that she could not give them any money, they threatened to kidnap her daughter. Romero Morales said that she would call the police, but the men responded that if she did so, they would kill her and kidnap her daughter anyway. Romero Morales took the threat seriously, as one of the men brandished a firearm during the encounter. So after the men left, Romero Morales shuttered her business and fled the country with M.J.A.R.

Separately, Romero Morales faced some troubles in Guatemala while she was out spreading the word of her faith as an evangelical Christian. She would often travel to other villages and go door to door with her church group to preach, but most residents were Catholic and shut their doors on them. On at least one of these trips, her group was chased out by village gangsters because her group ventured into the gangsters' territory. Notably, the gangsters threatened to kill her group because "it wasn't [her group's] village." A.R. 135.

Soon after Romero Morales and M.J.A.R. arrived in the United States, the Department of Homeland Security ("DHS") commenced removal proceedings against them. In response, they conceded removability and then applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In their application, Romero Morales argued that she was, and would continue to be, persecuted in Guatemala on account of her religion and her membership in two particular social groups: (1) "Guatemalan women who are business owners that are perceived as having access to money," and (2) "Guatemalan women living on their own,

or with children, without a spouse or male partner to provide protection or support."[1]  *Id.* at 422–423.

The IJ denied the application.  First, the IJ concluded that Romero Morales was not entitled to asylum or withholding of removal based on her religion because the evidence did not show that she had been subject to harm motivated by her evangelical Christian faith.  The IJ noted that Romero Morales had not been seriously injured or threatened on account of her faith, and that any disputes she faced while proselytizing appeared territorial rather than religious in nature.  The IJ also found that Romero Morales produced no evidence that any harm she suffered was motivated by her membership in a particular social group.  In particular, the IJ highlighted Romero Morales's testimony that gang-related extortion was prevalent in the country, impacting men and women alike.  The IJ further found that Romero Morales did not sufficiently demonstrate an inability to relocate within the country or that she was entitled to CAT protection.

Romero Morales appealed to the BIA.  She argued that the IJ erred by failing to find that she faced sufficient persecution, reiterating that her religious background and proposed social groups warranted protection.  She also challenged the IJ's internal-relocation determination, but she did not challenge the IJ's resolution of her CAT claim.  The BIA found that Romero Morales had waived her CAT claim, and it affirmed the IJ in every other respect.

## II.

We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final orders of removal. *Mohammed v. Bondi*, 129 F.4th 988, 989–90 (6th Cir. 2025).  "Where, as here, the [BIA] issues its own decision, we review the [BIA's] decision as the final agency determination but also review

---

[1] Before us, Romero Morales challenges only the BIA's ruling regarding her proposed group of single Guatemalan women living without male spouses or partners to provide support.  We therefore address only this proposed particular social group.

the [IJ's] decision to the extent that the [BIA] adopted it." *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020) (citation modified).

We review the BIA's legal determinations de novo and its factual findings under the substantial-evidence standard. *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024). Under this standard, we "will uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (citation modified). And we will not reverse the BIA's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**III.**

Romero Morales argues that the BIA erred by denying her application for asylum and withholding of removal. Asylum and withholding of removal can protect noncitizens[2] from removal based on their membership in a protected group. DHS or the Attorney General may grant asylum to an applicant who proves she is "unable or unwilling to return to" her "country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). As for withholding of removal, the Attorney General may not remove a noncitizen to a country if that person's "life or freedom would be threatened in that country because of" her "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(a)(b)(3)(A). "Persecution is the infliction of harm or suffering by the government, or

---

[2] We use the term "noncitizen" as equivalent to the statutory term "alien." *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023).

persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023) (citation modified).

Both asylum and withholding-of-removal claims require an applicant to show a "nexus" between her "risk of persecution in the country of removal" and her "membership in a protected group." *Patel v. Bondi*, 131 F.4th 377, 381 (6th Cir. 2025). This requires the applicant to present "*some* evidence" that "the government, or persons the government is unwilling or unable to control," sought "to overcome a [protected] characteristic." *Sebastian-Sebastian*, 87 F.4th at 847 (quotations omitted). "This is a question of motive, not just simple causation." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019).

The standard for showing a nexus differs for asylum and withholding-of-removal claims. "[A]n asylum claim requires that a statutorily protected ground be 'at least one central reason' for alleged persecution." *Sebastian-Sebastian*, 87 F.4th at 851 (quoting *Guzman-Vazquez v. Barr*, 959 F.3d 253, 270 (6th Cir. 2020)). But a withholding-of-removal claim "requires only that a statutorily protected ground be 'a reason' for alleged persecution." *Id.* Because "'a reason' is different from—and weaker than—'a central reason,'" *Guzman-Vazquez*, 959 F.3d at 272, an applicant who cannot satisfy the nexus requirement for her withholding-of-removal claim necessarily cannot satisfy the more stringent requirement for her asylum claim.

Romero Morales asserts she was persecuted because of two protected characteristics: (1) religion and (2) membership in a particular social group. Romero Morales is an evangelical Christian. And she claims membership in the social group of "Guatemalan women living on their own or with their children without a spouse or a male partner to provide protection or support." Although the government contests whether Romero Morales's proposed social group is cognizable, we need not decide that issue because she has failed to show that the BIA erred in

finding a lack of nexus between her alleged persecution and the proposed group. The BIA's nexus determination is a finding of fact, so we review it under the substantial-evidence standard. *Turcios-Flores v. Garland*, 67 F.4th 347, 357 (6th Cir. 2023).

To obtain relief, Romero Morales needed to show, at bottom, that either her religion or her membership in her proposed social group was a reason for her persecution. But, as the BIA found, the gang members and other men targeting her did not do so based on either of these characteristics; rather, their territorialism and attempted extortion were symptomatic of broader trends in Guatemala. Romero Morales in fact admits that she was chased out while proselytizing because of the perceived breach of territory. And there is no evidence that the two men who came to her diner targeted other single Guatemalan women living without a male partner—instead, they likely selected Romero Morales for the mere reason that she, nearly alone at her store, was a convenient target.

Romero Morales's response does not persuade us otherwise. She argues that "[t]hreats during proselytizing linked harm to her religion" and that the "gang members' gendered threats to [harm] Petitioner's daughter targeted their vulnerability as women without male protection." D. 10 at p.24. But this misses the point. That a harm is merely *linked* to or implicates a protected characteristic is separate from whether the harm is *motivated* to overcome that characteristic. *See Sebastian-Sebastian*, 87 F.4th at 847. Romero Morales needed to prove the latter yet failed to do so. As the BIA correctly concluded, Romero Morales's alleged past harm and fear of future harm related to general crime conditions in Guatemala, not Romero Morales's asserted protected conditions. A reasonable adjudicator would not be "compelled to conclude to the contrary." *Ming Dai*, 593 U.S. at 365 (quotation omitted).

Because Romero Morales did not show that her religion or proposed social group were reasons for her alleged persecution, the BIA properly rejected her asylum and withholding-of-removal claims.

**IV.**

For these reasons, we **DENY** the petition for review.