NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0169n.06

No. 25-3483

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 15, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| FERMIN PABLO-DIAZ, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| TODD W. BLANCHE, Acting U.S. Attorney General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Fermin Pablo-Diaz filed an application for withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture ("CAT"), 8 C.F.R. 208.16(c). An immigration judge ("IJ") denied Petitioner's application and the Board of Immigration Appeals ("BIA") affirmed. Petitioner now petitions for review of the BIA's order. For the reasons set forth below, we **DENY** the petition for review.

## I.    BACKGROUND

Petitioner Fermin Pablo-Diaz is a citizen of Mexico who entered the United States without admission when he was fifteen years old. Following arrests for driving without a license and driving under the influence, Petitioner was served with a notice to appear (NTA) on October 25, 2012. On May 12, 2015, Petitioner submitted his application for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and protection under the CAT.

After several continuances, Petitioner appeared before an IJ to explain the bases for his application. On direct examination, Petitioner testified how his cousin, Martin Santos, was violently beaten by gangs after he was deported to Mexico in 2008. Those gangs perceived Mr. Santos to have "a lot of money" or that Mr. Santos "believe[d] that [he] [was] better than them" because he had just returned from the United States. AR at 140. Mr. Santos was hospitalized as a result of this attack. Additionally, another of Petitioner's cousins committed suicide following his deportation to Mexico. Petitioner noted how that cousin was "afraid to go back" to Mexico, wanted to stay with his family and wife in the United States, and suffered from depression.

From these experiences, Petitioner expressed fear that local gangs would likewise perceive him to be wealthy or obstinate by virtue of his time in the United States and would thus beat him and his children. Petitioner did not believe that anywhere in Mexico would be safe for him or his family because he viewed corruption, crime, and gangs to be prevalent throughout the entire country. Petitioner could not name a particular criminal organization or group that would harm him or his family, just that "any . . . criminal organization or group[,] . . . [or] drug addict" that perceived Petitioner in the way that he feared could harm him and his family.

On cross examination, the government's attorney questioned Petitioner about his cousin, Eric. Petitioner initially testified that this cousin also had a negative encounter with gangs but was still alive. The government's attorney then referred to a letter of support from Petitioner's aunt, which stated that a cousin named Eric Diaz had passed away. Petitioner then clarified that he had two cousins named Eric and that Eric Diaz did indeed die after an encounter with a gang. He also confirmed that both cousins had returned to Mexico from the United States prior to these encounters.

After the IJ heard Petitioner's testimony and considered the submitted record, the IJ found Petitioner's testimony to be credible and consistent with his application. The discrepancy relating to Petitioner's other cousins were deemed "not significant for the purposes of determining the decision in this case." AR at 73–74.

The IJ then considered the merits of Petitioner's withholding of removal claim. To succeed, Petitioner had to show that he experienced past persecution or had a well-founded fear of future persecution on account of a statutorily protected ground, such as Petitioner's race, religion, political opinion, nationality, or membership in a particular social group ("PSG"). *See* 8 U.S.C. § 1231(b)(3)(A). The IJ concluded that Petitioner failed to provide sufficient evidence of a clear probability of persecution. Specifically, it found that Petitioner failed to provide any evidence of past persecution because he only provided examples of his family members' encounters with gangs in Mexico. The IJ also found that, while Petitioner's testimony and submitted supporting documents established his sincere subjective fear of returning to Mexico, the record did not support an objective basis for that fear.

The IJ then addressed whether Petitioner's race, religion, political opinion, nationality, or membership in a PSG were protected grounds under the Immigration and Nationality Act ("INA"). Petitioner only claimed protection because of his membership under two PSGs: (1) "Mexican citizens who live with immediate family members who are United States citizens"; and (2) "Mexican citizens who recently returned from the United States [who] will be perceived to have access to large sums of money." AR at 75.

A PSG is cognizable and therefore a protected ground under the INA if a petitioner demonstrates that it is (1) "immutable," (2) "particular[]" and (3) "socially distinct." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015) (quotation omitted). Such protected PSGs

may include immediate family membership. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009), *superseded on other grounds by statute*, 8 U.S.C. § 1252(b)(3)(B). The IJ, however, ultimately concluded that neither of Petitioner's two proffered PSGs were cognizable or protected under the INA. As to the group of "Mexican citizens who live with immediate family members who are United States citizens," the IJ held that this Court disapproved of PSGs based on a family member's persecution in *Akhta v. Gonzales*, 406 F.3d 399, 406 (6th Cir. 2005). AR at 75. For Petitioner's second group of "Mexican citizens who recently returned from the United States [who] will be perceived to have access to large sums of money," the IJ determined that our opinion in *Sanchez-Robles v. Lynch*, 808 F.3d 688 (6th Cir. 2015) held that the INA did not protect PSGs that assume that a petitioner will be the target of persecution for financial gain. *Id.* at 76.

The IJ also held that Petitioner failed to demonstrate nexus, or that Petitioner's past persecution or well-founded fear of future persecution was "on account of" a statutorily protected ground. *Id.* at 76. The IJ explained that Petitioner's failure to establish a recognizable PSG necessarily meant that he failed to demonstrate nexus.

Finally, the IJ addressed Petitioner's CAT claim. It determined that Petitioner failed to show either that he would be tortured by gangs upon return to Mexico or that the Mexican government would acquiesce or turn a blind eye to such torture. The IJ then ordered Petitioner removed from the United States to Mexico.

Petitioner then appealed the IJ's decision to the BIA. Before the BIA, Petitioner challenged the IJ's findings that Petitioner's proffered PSGs were not cognizable under the INA. Petitioner also contended that he could demonstrate a nexus between his past or well-founded fear of future persecution and his proffered PSGs through a mixed-motive analysis. The BIA disagreed with Petitioner. The Board affirmed the IJ's finding that Petitioner did not establish past harm since

Petitioner was never personally harmed or threatened. The Board also agreed with the IJ that Petitioner's withholding of removal claim "[did] not implicate any protected ground under section 101(a)(42)(A) of the INA." AR at 4. Specifically, the Board agreed with the IJ that the gang members described by Petitioner were not motivated by Petitioner's membership in his proffered PSGs. Instead, the Board determined that the gangs were motivated only by financial gain, which was not a protected ground under the INA. The Board also considered Petitioner's CAT arguments to be waived because he did not meaningfully raise a CAT challenge in his briefing. Affirming the IJ on these grounds, the Board declined to address any other elements of eligibility for withholding of removal, including whether Petitioner's PSGs were lawfully cognizable. Petitioner's timely petition for review followed.

## II.  DISCUSSION

### A. Standard of Review

Where, as in the instant case, the Board issues a separate opinion in lieu of summarily affirming the IJ's decision, we review the Board's decision as the final agency determination. *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023). "We review the IJ's reasoning only to the extent the Board adopted it." *Id.* "[A]ny issues the Board did not address are not before the court." *Id.*

"The IJ and the BIA's factual findings are reviewed under the substantial-evidence standard." *K. H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019). Under this deferential standard, we "cannot reverse the board's determination simply because [we] would have decided the matter differently." *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). Factual findings of the IJ and the BIA "are conclusive unless any reasonable adjudicator would be compelled to conclude to the

contrary." *K. H.*, 920 F.3d at 475 (quoting *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014));

8 U.S.C. § 1252(b)(4)(B).

### B. Analysis

#### 1. Withholding of Removal

Withholding of removal is mandatory if the applicant "shows a 'clear probability' that, if

[he] was removed, [his] 'life or freedom would be threatened' on a protected ground such as [his]

'race, religion, nationality, membership in a particular social group, or political opinion.'"

*Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017) (quoting 8 U.S.C. § 1231(b)(3)(A)). "A

'clear probability' means that it is 'more likely than not' that the [applicant] would be subject to

persecution if returned to the country of removal." *Id.* (quoting *INS v. Stevic*, 467 U.S. 407, 429–

30 (1984)). "A determination as to eligibility for withholding of removal is conclusive if supported

by substantial evidence." *Id.*

The Board affirmed the IJ's denial of Petitioner's withholding of removal claim on two

grounds. First, the Board concluded that Petitioner did not establish past persecution or a well-

founded fear of future persecution. Second, the Board agreed with the IJ that any future

persecution of Petitioner lacked a nexus to or would not be due to "any [of the] protected ground[s]

under section 101(a)(42)(A) of the INA." AR at 4. Specifically, the Board agreed with the IJ that

the gangs were not at all motivated to threaten or harm Petitioner because of his membership in

his proffered PSGs.

On petition for review, Petitioner additionally raises arguments as to whether his proffered

PSGs were cognizable under the INA. Because the Board declined to address this issue, we lack

jurisdiction to review it. *See Turcios-Flores*, 67 F.4th at 353.

Petitioner fails to satisfy the nexus requirement for his withholding of removal application. Our analysis therefore starts, and ends, there.

To succeed on his withholding of removal claim, Petitioner must demonstrate nexus, or that "his risk of persecution is 'because of' his protected status." *See Patel v.* Bondi, 131 F.4th 377, 381 (6th Cir. 2025) (quoting 8 U.S.C. § 1231(b)(3)(A)). Nexus "is a question of motive, not just simple causation." *Id.* at 382 (quoting *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019)). Petitioner therefore needed to provide evidence that the gangs' persecution was "motivated by a particular animus toward [the protected group] itself'—that is, a desire to harm [members of the group] for the reason that they are [members of the group]—and not a more general reason, such as the 'ordinary criminal desire for financial gain.'" *Id.* (quoting *Cruz-Guzman*, 920 F.3d at 1037). "A nexus determination is a finding of fact and is thus reviewed under the substantial-evidence standard." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023).

The Board agreed with the IJ that Petitioner's alleged fear of persecution was not based on a statutorily protected ground under the INA, but it did so by applying an incorrect legal standard. In this circuit, an applicant need only "demonstrate that a protected ground was at least one reason for their persecution" to ultimately prevail on their withholding of removal claim. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020); *see* 8 U.S.C. § 1231(b)(3)(C). The Board, however, committed legal error when it applied the more stringent "one central reason" test to Petitioner's withholding of removal claim, which requires an applicant to instead demonstrate that a protected ground was "at least one central reason for the alleged persecution." *See Guzman-Vazquez*, 959 F.3d at 270 (quotation omitted).

Though the Board committed legal error, the error was harmless. "[W]e have endorsed a limited application of the harmless-error doctrine in the immigration context." *Abdulahad v. Garland*, 99 F.4th 275, 295 (6th Cir. 2024). "When the Board does not make the proper inquiry and legal conclusions, supported by legal analysis and reasoning, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007)) (citation modified). It is not enough that the Board may reach the same result upon remand, it must still "articulate the rationale for [its] decision." *Id.* (quoting *Preçetaj v. Sessions*, 907 F.3d 453, 459 (6th Cir. 2018)). "If 'the agency's reasoning was inadequate, its decision may be upheld on the basis of harmless error if the petitioner's prospects are otherwise so weak that there is no reason to believe remand might lead to a different result.'" *Id.* (quoting *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010)) (citation modified). Put differently, "remand is not required when doing so 'would be futile.'" *Id.* (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 721 (6th Cir. 2009)).

The Board's conclusion that Petitioner failed to demonstrate nexus presents one such rare circumstance where harmless error is appropriate. The Board took no issue with the IJ's conclusion that the "gangs were not motivated to threaten or harm [Petitioner] on account of his membership in his described particular social groups." AR at 4. It concluded that Petitioner only demonstrated that the gangs were motivated by mere "financial gain," which is not a protectable ground under the INA. *Id.*; *see Patel*, 131 F.4th at 382. The Board thus ultimately found that Petitioner's withholding of removal claim "[did] not implicate *any* protected ground" under the INA. AR at 4 (emphasis added).

Petitioner contends that the IJ and the Board's conclusions as to motive were wrong because they did not conduct a mixed-motive analysis. But the record in the instant appeal does

not warrant a mixed-motive analysis. Though Petitioner implores us to "consider the relationship between the economic and political agendas of Mexican gangs and apply a mixed motive analysis to the case at bar," Petitioner's Br., at 21, Petitioner fails to "point to any specific evidence in the record or otherwise demonstrate that [his] membership in [his PSGs] was . . . *a* reason[] for the persecution [he] faced." *Sebastian-Sebastian*, 87 F.4th at 850 (emphasis in original). To be sure, Petitioner provides his testimony that his cousin was beaten by gangs in 2008 because he was perceived as having money and 2018 and 2019 country condition reports demonstrating the general pervasiveness of violent crime in Mexico. But the gangs did not "expressly connect[] their actions to the Petitioner's [PSGs]." *Mazariegos-Rodas*, 122 F.4th at 672–73. On these facts, we cannot say that "the more likely explanation for persecution" was Petitioner's membership in his PSGs as opposed to mere pecuniary gain. *Patel*, 131 F.4th at 382 (quoting *Cruz-Guzman*, 920 F.3d at 1038). Because the record ultimately does not compel a finding that Petitioner's fear of future persecution would be on account of his membership in his proffered PSGs, we do not disturb the Board's conclusions as to motive.

Thus, under either nexus standard, the Board would not have found that Petitioner demonstrated that his risk of persecution was due to his protected status. *See Patel*, 131 F.4th at 381 ("[T]he difference in the nexus standard matters little when substantial evidence supports the Board's finding of 'no nexus at all between' the risk of future persecution and a claimant's membership in a protected class." (quotation omitted)). Remand on this ground would therefore be futile. Since the issue of nexus is dispositive to Petitioner's withholding of removal claim, we decline to grant the petition for review as to this claim.

## 2. Convention Against Torture

Petitioner also makes a passing request in his brief that this Court reverse the Board's affirmance of the IJ's denial of his CAT claim. The BIA denied his appeal of this claim because it determined that Petitioner waived this issue because he "ha[d] not meaningfully challenged the [IJ's] denial of protection under the CAT." AR at 3 n.1.

We cannot reach the merits of Petitioner's request. We may "review a final order of removal only if . . . the [petitioner] has exhausted all administrative remedies available to [him] as of right[.]" 8 U.S.C. § 1252(d)(1). "This exhaustion requirement is not jurisdictional, but instead a claim-processing rule subject to either waiver or forfeiture." *Mazariegos-Rodas*, 122 F.4th at 664 (citing *Santos-Zacaria v. Garland*, 598 U.S. 411, 417–23 (2023)). "Claim-processing rules, however, 'may be mandatory in the sense that a court must enforce the rule if a party properly raises it.'" *Id.* (quoting *Fort Bend County v. Davis*, 587 U.S. 541, 549 (2019)). In its opposition brief, the government properly raised the issue of whether Petitioner has administratively exhausted his CAT claim before the BIA.

We have interpreted exhaustion to "require[] the [petitioner] to preserve *each claim* by presenting it to the BIA." *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (emphasis in original), *abrogated on other grounds by Santos-Zacaria*, 598 U.S. at 417–23). To determine whether a petitioner has preserved his claim, "[w]e look to the [petitioner's] brief before the BIA to determine which claims the [petitioner] adequately raised before that body." *Id.* Petitioner's briefing before the BIA does not raise or discuss his CAT claim, so we cannot consider it on this appeal.

## III. CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.